## DENNISON v. PAYNE, Agent, etc.

(Circuit Court of Appeals, Second Circuit. June 20, 1923.)

No. 151.

1. **Commerce ⬤⟹27(7)—Member of switching crew held employed in "interstate commerce," when last train moved contained interstate car.**

Plaintiff's intestate, as a member of a switching crew of defendant, took a number of loaded cars, one of which was billed outside the state, to yards several miles distant, where they were left together on a receiving track. The crew had then completed their day's work of eight hours and proceeded in a caboose to their home station, but were required to stop at an intermediate point, where they might receive orders for overtime work. Before reaching that point plaintiff's intestate was killed through negligence of defendant. *Held*, that the run being made to the home station was incidental to the last service performed, and that plaintiff's intestate, when killed, was employed in interstate commerce, within Employers' Liability Act, § 1 (Comp. St. § 8657).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. **Commerce ⬤⟹27(5)—Intended change to intrastate employment cannot affect status of railroad employee, under Employers' Liability Act.**

That a railroad employee, when killed, after completing his day's work in interstate commerce and on his way home, was under instructions to stop at a place where he would have received orders for overtime work in intrastate commerce, cannot change his status at the time of his death, and does not affect the right of recovery for his death, under Employers' Liability Act, § 1 (Comp. St. § 8657).

3. **Judgment ⬤⟹641—Decisions of public officers and boards may constitute res judicata.**

The rule which forbids the reopening of a matter once judicially determined by competent authority applies as well to the judicial and quasi judicial acts of public officers and boards as to the judgments of courts having general judicial powers.

4. **Judgment ⬤⟹636—Decision of court or tribunal without authority cannot be set up as res judicata.**

The decision of a court, officer, or board acting without authority in the premises is not merely voidable, but void, and cannot be set up as res judicata against objection.

5. **Courts ⬤⟹24—Consent cannot give jurisdiction of subject-matter.**

Consent cannot validate a judgment of a tribunal which was without jurisdiction of the subject-matter.

6. **Master and servant ⬤⟹416—Award by state workmen's compensation board held not subject to collateral attack.**

An award made for the death of a railroad employee by the workmen's compensation board of a state, based on a finding that he was employed in intrastate commerce, is within its jurisdiction and valid and is only reversible in direct proceedings therefor, and not subject to collateral attack.

---

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. **Commerce ⬚8(6)—Negligent injury or death of railroad employee while employed in interstate commerce not subject of action under state workmen's compensation laws.**

Congress, by enactment of the Employers' Liability Act (Comp. St. §§ 8657–8665), giving a right of action for the injury or death of an employee through the negligence of an interstate railroad carrier, prohibited the states from including within the protection of their workmen's compensation laws such employees who were injured or killed while employed in interstate commerce.

8. **Appearance ⬚9(1)—"Special appearance" only to object to jurisdiction.**

An appearance is special only when made to object to the jurisdiction, and filing of workmen's compensation petition, though stating that it is filed only to prevent running of limitations, is not a special appearance.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Special Appearance.]

9. **Master and servant ⬚416—Award to widow under state Workmen's Compensation Act no bar to action by administratrix under federal Employers' Liability Act.**

An award made to the widow of a railroad employee for his death, under a state workmen's compensation law, on a finding that at the time of death he was employed in intrastate commerce, is not a bar to an action by such widow, as administratrix, under the federal Employers' Liability Act (Comp. St. §§ 8657–8665), on the ground that deceased was employed in interstate commerce; the parties in the two proceedings not being the same.

10. **Judgment ⬚585(1)—For a judgment to be a bar to a second action, the cause of action in the two suits must be the same.**

The judgment in one action is not a bar to another, unless the cause of action is the same in both.

11. **Action ⬚1—Cause of injury is only one element in cause of action.**

The cause of the injury on which a right of action is based is not the cause of action itself, but is only one element in the cause of action, which comprises every fact which plaintiff is obliged to prove to obtain judgment.

12. **Action ⬚1—"Cause of action" and "remedy" are different things.**

The "cause of action" is something distinct from the "remedy" which is simply the means by which the cause of action is satisfied.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Cause of Action; Remedy.]

In Error to the District Court of the United States for the Southern District of New York.

Action at law by Rose E. Dennison, as administratrix of Harry W. Dennison, deceased, against John Barton Payne, as Federal Agent, arising out of federal control of the Delaware, Lackawanna & Western Railroad Company. Judgment for defendant, and plaintiff brings error. Reversed.

Frank F. Davis, of New York City, for plaintiff in error.
Douglas Swift, of New York City, for defendant in error.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

ROGERS, Circuit Judge. This action was brought under the federal Employers' Liability Act (Comp. St. §§ 8657–8665) to recover damages for the death of the plaintiff's intestate, who for several years prior to his death had been in the employ of the Delaware, Lackawanna

⬚For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

& Western Railroad Company, and at the time of his death was in the service of the federal agent, John Barton Payne, defendant herein, who was operating the said railroad under government control. At the time he met his death the decedent was acting as a train flagman of a switching crew. He was killed on the night of April 28, 1919, while riding in the caboose of his train, by reason of a collision between his train and another on the same track. The crew to which he belonged left the Hanover yard of the railroad about 7 p. m. on the night above mentioned, with a train consisting of loaded coal cars, three engines, and a caboose for the Hampton yard, a movement of about 22 miles over the main line of the Bloomsburg division of the Delaware, Lackawanna & Western Railroad, and entirely within the state of Pennsylvania. The crew was charged with taking the train of loaded coal cars to Hampton yard only. At that point the train was broken up by other crews, and the cars made up into other trains for points beyond. This train contained one car of coal which was billed at the mines to a point outside the state of Pennsylvania. On the arrival of the train at Hampton yard it was placed upon a receiving track, and the three engines and a caboose were disconnected from the train and coupled together, and with these engines and the caboose the entire crew, including the decedent, left Hampton yard for a point called Taylor crossover, about 3 miles distant. When the crew left the coal cars at Hampton yard, they had completely ended their work in connection therewith. The movement from Hampton yard to Taylor crossover was in the direction of Kingston or Scranton; that is to say, at Taylor crossover a train coming from Hampton yard might proceed either in the direction of Scranton, a distance of 3 miles, or in the direction of Kingston, a distance of about 18 miles. It was on the movement from Hampton yard to Taylor crossover, and at a point about 2,000 feet short of the latter point, that the accident in which decedent lost his life occurred.

The railroad had in effect standing instructions for such crews on leaving Hampton yard to go to Taylor crossover and report for orders. At that point they might receive orders to move trains of empty cars from Taylor yard to Kingston or to go to Scranton and get cars of live stock or freight for points on the Bloomsburg division. When Conductor Smith's crew left Hampton yard with the three engines and caboose, they were proceeding pursuant to such standing instructions in the direction of Kingston, where all the train crew lived except one, and he had to go there to reach his home in a neighboring village, and it was at Kingston that the engines and caboose were nightly stalled, that they might be available for the train crew to commence work on the following morning. When this last train had been delivered at the Hampton yard, the entire train crew had been on duty and done a full day's work of 8 hours. Unless the conductor received further orders for work that night, when he reported to the yardmaster at Taylor crossover, the crew's duty for the day was done, and they had simply to return to their homes at Kingston and stall their equipment. If necessary, on their arrival at Taylor crossover, orders might have been issued calling upon the crew to work 8 hours longer overtime.

But before the engines and the caboose which contained the crew arrived at the Taylor crossover they ran into a loaded coal train standing unlighted and unguarded on the same track. The negligence of the defendant is admitted. As a result of this accident the plaintiff's intestate was killed, and also the fireman on the engine and the two brakemen. The plaintiff's intestate died from his injuries on the day following the accident. It appears that, if the accident had not occurred and the crew had arrived at the Taylor crossover, the conductor would have inquired of the yardmaster if there were any further orders for him, and would have received orders to move some empty cars from Taylor yard to Kingston yard. The assistant chief train dispatcher at Scranton, who at that time was in charge of the movement of trains over the Bloomsburg division, knowing that this crew was on the way from Hampton yard to Taylor crossover, had given to the yardmaster at the latter point orders to be given to the crew conductor upon his arrival at Taylor crossover.

At the beginning of the trial the counsel for the defendant stated to the court that he admitted that the plaintiff's intestate was killed in an accident which was caused by the negligence of a fellow servant, and that the defense was: (1) That he was engaged in intrastate commerce at the time of the accident, and that therefore there could be no recovery under the Employers' Liability Act. (2) That an award of compensation was made to the plaintiff by the Workmen's Compensation Board of Pennsylvania for the death of her husband, and that the award made is res adjudicata in the present action. He also admitted that the train of cars which was handled by the crew, to which the decedent belonged, and which was moved from Hanover yard to Hampton yard on the night of the accident, contained one car that was billed to a point outside of the state of Pennsylvania. The movement of that train was therefore an interstate movement.

The questions which this case presents are two. The first is whether the plaintiff's intestate met his death while he was employed in interstate commerce. If he did, then it will be necessary to inquire whether the proceedings before the Workmen's Compensation Board of the state of Pennsylvania operated as an estoppel preventing the plaintiff from maintaining this suit. If the plaintiff's intestate did not meet his death while he was engaged in interstate commerce, there is no right of recovery in this suit in any event. But, if he was so engaged, we must reverse the judgment, unless the plaintiff is estopped from maintaining this suit because the matter is res adjudicata, in view of the proceedings before the state board in Pennsylvania.

[1] We proceed to the consideration of the question whether the plaintiff's intestate met his death while engaged in interstate commerce. In support of the proposition that he was at the time engaged in interstate commerce. the plaintiff relies upon Erie Railroad Co. v. Winfield, 244 U. S. 170, 37 Sup. Ct. 556, 61 L. Ed. 1057, Ann. Cas. 1918B, 662. In that case at the conclusion of his day's work the employee of the railroad took his engine to the place where it was to remain for the night and started to leave the yard. While so leaving he was injured. The court held that in leaving the carrier's yard at the close of his

day's work he was but discharging a duty ·of his employment; that, like his trip through the yard to his engine in the morning, it was a necessary incident of his day's work, and partook of the character of that work as a whole, being no more an incident of one part than of another; as his day's work had been in both interstate and intrastate commerce, therefore, when he was leaving the yard at the time of the injury, his employment was in both; that he was plainly employed in interstate commerce. That his employment also extended to intrastate commerce was, the court said, "for present purposes of no importance."

It is claimed that that case is decisive of the one now before us, as it appears that, after the train crew had made delivery of its last train of cars, including the interstate car, at the Hampton yard, and begun the trip to the Taylor crossover, the intestate had finished his work for the day and was practically "on his way out of the yards." The evidence shows that he had completed his eight hours of service. The Act of September 3–5, 1916, c. 436, 39 Stat. 721 (Comp. St. §§ 8680a–8680d), provides that 8 hours shall be deemed a day's work for persons employed by common carriers by railroad, with certain exceptions which need not be now considered. Having completed his work, the decedent was on his way home, unless he received orders at the Taylor crossover to perform additional service; but in any event the run he made from Hampton yard on his way back was incidental to the work last engaged in, and that was in interstate commerce, as well as in intrastate commerce, which last may be disregarded in this case, as in the Winfield Case.

The defendant, on the other hand, relies upon Erie Railroad Co. v. Welsh, 242 U. S. 303, 37 Sup. Ct. 116, 61 L. Ed. 319. In that case a yard conductor, accompanied by a yard crew, took a freight car destined to a point without the state and loaded with merchandise, and a caboose which, so far as appears, was not to go beyond the limits of the state, from Brier Hill yard to the F. D. yard in Youngstown, where the freight car was placed upon a siding to be made up into a train by another crew. They then took the caboose a short distance farther and placed it on a siding. They next took the engine to a water plug and took on water, and then returned with it to the Brier Hill yard. On this return movement the engine was slowed down near the yardmaster's office, so as to enable the plaintiff to report for further orders, all previous orders having been executed, and the injury was received while he was attempting to alight for that purpose. It was in evidence, also, that the orders the plaintiff would have received, had he not been injured on his way to the yardmaster's office, would have required him immediately to make up an interstate train.

The plaintiff contended in the above case that his act in stepping from the engine was in completion of his trip to the "F. D. yard" with the interstate car, and hence was in itself an act in furtherance of interstate commerce; but the Supreme Court held that the question was whether at the time of his injury he was performing an act so directly and immediately connected with his previous act of placing the interstate car in the F. D. yard as to be part of it or a necessary incident

thereto, and it stated that this question depended upon whether the series of acts that he had last performed was properly to be regarded as a succession of separate tasks, or as a single and indivisible task. The Supreme Court held that he was engaged in intrastate commerce. · In that case there were three distinct acts involved. The first was an act in interstate commerce, the act of placing and leaving on the siding the interstate car. The next was an act in intrastate commerce, the act of taking the caboose a short distance further and leaving it on a siding. The next and third act, that of taking on water, an act which, as we said in Erie R. R. Co. v. Down, 250 Fed. 415, 162 C. C. A. 485, might be disregarded as being preparatory to whatever work he might next be engaged in. The act of intrastate commerce intervened between the act of interstate commerce and the injury.

In the instant case no distinct act intervened between leaving the intrastate cars and the interstate car on the receiving track at Hampton yard and the commencement of the trip to Taylor crossover. Is this trip to Taylor crossover for further orders, like the act of taking on water in the Down Case, one which can be disregarded as being preparatory to whatever work might next be engaged in? And if, before any other work was engaged in, the plaintiff's intestate was killed, did the fact that he had last been engaged in interstate commerce before doing the act which is disregarded enable us to say that he was engaged in interstate commerce at the time of his death? We answer these questions in the affirmative.

[2] In answering them, we disregard the fact that if this accident had not happened, and the intestate and his associates had arrived at Taylor crossover, the orders which the crew would have received would have required them to perform work in intrastate commerce; that is, in hauling a train of empty cars from Taylor crossover to Kingston yard. In the Welsh Case the court said:

"By the terms of the Employers' Liability Act the true test is the nature of the work being done at the time of the injury, and the mere expectation that plaintiff would presently be called upon to perform a task in interstate commerce is not sufficient to bring the case within the act."

If the expectation that the employee would presently be called upon to perform a task in interstate commerce is not sufficient to bring a case within the Employers' Liability Act, a like expectation that he would presently be called upon to perform a task in intrastate commerce is equally insufficient to take a case out of the statute which would otherwise be within it. The orders which might have been given upon the arrival at Taylor crossover are wholly immaterial to fix the status of the intestate at the time of the accident. See Minneapolis & St. Louis R. Co. v. Winters, 242 U. S. 353, 357, 37 Sup. Ct. 170. 61 L. Ed. 358, Ann. Cas. 1918B, 54; Shanks v. D., L. & W. R. Co., 239 U. S. 566, 36 Sup. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797; Illinois Central R. Co. v. Behrens, 233 U. S. 473, 34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163; Pedersen v. D., L. & W., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153.

In Director General of Railroads v. Bennett (C. C. A.) 268 Fed. 767, the facts were as follows: A locomotive engineer of a yard engine

employed in shifting cars, employed in both interstate and intrastate commerce hauled a train of interstate cars to its destination in the railroad yard. The eight-hour day of the shifting crew having ended, the next movement of Bennett was to take his engine to the round house, there to receive orders, if any, to be carried out on overtime, or, lacking orders, to house and discharge the crew. In making this movement the engine met with an accident, and Bennett died from injuries sustained from escaping steam. The Circuit Court of Appeals for the Third Circuit held that Bennett was engaged at the time of his injury in interstate commerce. The court said:

"On both reason and authority we are of opinion that, when Bennett was injured while leaving his job at the end of the day, notwithstanding the movement might have been, but actually was not, interrupted by an order to proceed elsewhere on overtime, he was but discharging a duty of his employment in a manner necessarily incident to the interstate movement he had just completed."

That case in principle is on all fours with the case now before the court, and was, as it seems to us, correctly decided. In the Welsh Case the injured man had not completed his day's work, and the last act he had performed, before starting back to Brier Hill yard, where he was employed in shifting cars and breaking up and making up trains under orders of the yardmaster, was in intrastate commerce, and in returning from its performance he stopped at the yardmaster's office for further orders, and if he had not been injured on his way to obtain the orders he would have been required to make an interstate train. It was simply held that he was not employed at the time of his injury in interstate commerce. The case in its essential facts differs from the one under consideration, in that in this case the last act the injured man did was in interstate commerce, in placing the interstate car along with intrastate cars on the receiving track or siding. In doing that he was acting in interstate and in intrastate commerce. Having completed the task and in returning therefrom the accident happened. In returning home or for further orders the return trip was an act so directly and immediately connected with his previous act of placing the interstate and intrastate cars on the siding as to be a necessary incident thereto. In the Welsh Case the cars which were to go outside the state were placed on a siding, and then the caboose, which was to remain in the state, was taken to another siding and left there. In the present case the cars, intrastate and interstate, were not left on different sidings and separately handled, but were left together on one and the same siding, by one and the same act.

At the close of the instant case the defendant moved for the direction of a verdict in its favor upon two grounds: (1) That the plaintiff had failed to prove that the decedent was engaged in interstate commerce at the time of his accident. (2) That the award of the Workmen's Compensation Board of Pennsylvania was res adjudicata on the question of interstate or intrastate commerce, and operated as a bar and estoppel to the prosecution of the action.

The court thereupon directed a verdict for the defendant, and stated that it did so on the ground that the case was not an interstate case.

The court expressed no opinion as to whether the action was barred by the decision made by the Workmen's Compensation Board of Pennsylvania, and no exception was taken to its failure to direct a verdict on that ground as well as on the other. It appears that the plaintiff herein, suing as administratrix of the decedent, commenced originally a suit against the defendant in the United States District Court for the Middle District of Pennsylvania to recover the damages caused by reason of the death of the decedent due to the injuries complained of herein. That action was commenced at the October term, 1919. Thereafter, and on April 14, 1920, the plaintiff herein in her individual name filed with the Workmen's Compensation Bureau of the Pennsylvania Department of Labor and Industry at Harrisburg a claim petition against the defendant because of the death of the decedent, stating on the petition that:

"Claimant files this petition to obviate the running of the statute of limitations under the state compensation law, in the event that the deceased was not engaged in interstate commerce, which fact is now in litigation in the courts."

The petition did not allege whether at the time of his death the commerce he was engaged in was interstate or intrastate, and it appears that under the workmen's compensation law of Pennsylvania (Pa. St. 1920, §§ 21916 et seq.) a claim must be filed within one year of the injury. As the injury happened on April 28, 1919, and death resulted on the next day, and the claim was filed on April 13, 1920, the time within which it could legally be filed had almost elapsed before filing took place. It was at that time evident that the case brought in the District Court in Pennsylvania could not be reached for trial before the statute of limitations, governing proceedings before the Workmen's Compensation Bureau, would expire. It was to save her rights, in case the court should decide that the decedent was not engaged in interstate commerce, that the plaintiff took the action she did.

The proceeding thereafter came on for hearing before a referee pursuant to the statute, and the referee after such hearing made an award to the claimant of the amount to which she was entitled under the statute. In connection with the award he made findings of fact and conclusions of law, in which he found that the decedent at the time of the accident was engaged in intrastate commerce. On appeal by the defendant from the referee's award the Compensation Board granted a hearing de novo before the full board, at which additional testimony was taken. On the whole record, including the testimony taken before the referee as well as the testimony taken on the hearing de novo, the board made its decision, including findings of fact, conclusions of law, and award. It found specifically that the decedent at the time of his accident was engaged in intrastate commerce, and awarded the claimant the amount to which she was entitled under the statute. No appeal has been taken by either party from the board's decision, and the time within which an appeal can be taken has expired. It does not appear that payment of the award to the plaintiff has ever been made, or that application for payment has ever been made by her or on her behalf.

The defendant, however, now insists that this decision of the Workmen's Compensation Board of Pennsylvania is res judicata in the present action upon the question of the employment of the intestate in interstate commerce. It relies upon the general principle that a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction as a ground of recovery cannot be disputed in a subsequent suit between the same parties, but must be taken as conclusively established so long as the judgment in the first suit remains unmodified.

[3-5] We do not doubt the principle. Southern Pacific R. R. Co. v. United States, 168 U. S. 1, 18 Sup. Ct. 18, 42 L. Ed. 355. It is also undoubted law that the rule which forbids the reopening a matter once judicially determined by competent authority applies as well to the judicial and quasi judicial acts of public officers and boards as to the judgments of courts having general judicial powers. 24 Am. & Eng. Encyc. of Law, 723. And the law is equally well settled that, if a court, officer, or board has acted without authority in the premises, its decision is not merely voidable, but void, and affords no protection to those claiming under it, and it cannot be successfully set up as res judicata against objection, whether in a suit upon the same or a different cause of action. 24 Eng. & Am. Encyc. of Law, 718. If jurisdiction existed over the person and the subject-matter, its decision can only be reversed, annulled, or set aside in some direct proceeding authorized by law for the purpose. United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93. If, however, there was no jurisdiction, the decision is not merely voidable, but void, and the doctrine of res judicata has no application. Jurisdiction of the person may be conferred by consent; but, where there is no jurisdiction over the subject-matter, consent cannot confer it. Willard v. Wood, 135 U. S. 309, 10 Sup. Ct. 831, 34 L. Ed. 210; Thatcher v. Powell, 6 Wheat. 119, 5 L. Ed. 221.

[6] As the Workmen's Compensation Board had authority to make an award for injuries inflicted upon persons employed in intrastate commerce, it had necessarily jurisdiction to determine whether an injury complained of occurred in intrastate or in interstate commerce. In making its decision, its award would not be void. If erroneous, its decision would simply be voidable, to be corrected by writ of error or appeal. Its award has the effect of a judgment of a court of competent jurisdiction, no appeal having been taken therefrom. It cannot be attacked collaterally, and cannot be declared a nullity by any court after a writ of error or appeal is barred by limitation. The distinction between an error committed by a court exercising jurisdiction and one usurping a power without jurisdiction is clear and definite. In the one case its judgment is voidable, and in the other it is void. In the one case its judgment is good until reversed in a direct proceeding in an appellate court. See Voorhees v. Bank of United States, 10 Pet. 449, 474, 9 L. Ed. 490. In the other case it can be attacked collaterally.

[7] The federal Employers' Liability Act is paramount; Congress having the power under the commerce clause of the Constitution to regulate the liability of interstate carriers. The act gives to certain rela-

tives dependent upon an employee wrongfully injured while engaged in interstate commerce a right of action for the loss and financial damage resulting from his death. Congress by passing the Employers' Liability Act prohibited the states from including within the protection of their general workmen's compensation laws employees' who are injured or killed while engaged in interstate commerce. New York Central R. R. Co. v. Winfield, 244 U. S. 147, 157, 37 Sup. Ct. 546, 61 L. Ed. 1045, L. R. A. 1918C, 439, Ann. Cas. 1917D, 1139. If the decedent was killed while engaged in interstate commerce, the Workmen's Compensation Board of Pennsylvania was without jurisdiction to grant relief. If injured in interstate commerce, the relief therefor must be governed not by the statute of Pennsylvania, but by the federal Employers' Liability Act. The latter act, it is true, gives to the federal and state courts concurrent jurisdiction of cases arising under the act. U. S. Comp. St. 1916, Ann. § 8662. But the Pennsylvania statute creating the Workmen's Compensation Bureau does not authorize it to determine cases arising in interstate commerce. The liabilities and obligations of interstate railroad carriers to make compensation for injuries suffered by their employees while engaged in interstate commerce are regulated both inclusively and exclusively by the federal Employers' Liability Act. New York Central R. R. Co. v. Winfield, supra; Wabash R. R. Co. v. Hayes, 234 U. S. 86, 89, 34 Sup. Ct. 729, 58 L. Ed. 1226; Seaboard Air Line Ry. v. Horton, 233 U. S. 492, 501, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; North Carolina R. R. Co. v. Zachary, 232 U. S. 248, 256, 34 Sup. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159; Michigan Central R. R. Co. v. Vreeland, 227 U. S. 59, 66, 67, 33 Sup. Ct. 192, 57 L. Ed. 417, Ann. Cas. 1914C, 176.

[8] The statement which the petition contained that it was filed to obviate the running of the statute of limitations cannot be construed as a special appearance. A person appears specially only when he appears to object to the jurisdiction. But one who appears voluntarily, not for the purpose of denying jurisdiction, but to submit a claim for determination, is thereby estopped if the tribunal has jurisdiction to hear and determine the subject-matter of the claim. The reason assigned for submitting the claim is not material.

[9] It is, of course, well settled that to work an estoppel by judgment there must have been identity of parties in the two actions. Brown v. Fletcher's Estate, 210 U. S. 82, 28 Sup. Ct. 702, 52 L. Ed. 966. In the proceeding before the Workmen's Compensation Bureau the suit was brought in the name of "Rose E. Dennison, Claimant." The present action is brought in the name of "Rose E. Dennison, as Administratrix." It is claimed that, as Rose E. Dennison was the widow of the deceased, who left no children, she alone was interested in each of the suits, and was the sole person who could benefit therefrom, and the award made by the state board was to her alone. It is claimed, therefore, that the parties were the same in both. The federal Employers' Liability Act gives the right of action in case of the death of one employed in interstate commerce "to his or her personal representative" for the benefit of the surviving widow or husband and

children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee." 35 Stat. 65. As there were no children, Rose E. Dennison would be alone entitled under the act to whatever damages might be recovered; and it is admitted that she alone was entitled to the award of the Pennsylvania state board. In American Railroad Co. v. Birch, 224 U. S. 547, 32 Sup. Ct. 603, 56 L. Ed. 879, the action was brought under the federal act by the widow and son of the decedent, they being the sole beneficiaries, and not by the administrator. The Supreme Court, however, held that the action could not be maintained, but could be brought only in the name of the personal representative, and reversed the judgment without prejudice to the personal representative.

In Troxell v. Delaware, Lackawanna & Western Railroad Company, 227 U. S. 434, 33 Sup. Ct. 274, 57 L. Ed. 586, the facts were as follows: An action was brought under the state law of Pennsylvania, but in a federal court, to recover for the alleged wrongful death of the decedent. The action was instituted by the widow for the benefit of herself and children. That action she lost. Then she instituted in her name, as administratrix, another action in the same court suing under the federal Employers' Liability Act to recover for wrongfully causing the decedent's death. Judgment was entered in her favor, but the Circuit Court of Appeals for that Circuit reversed it, on the ground that the judgment in the first suit was a bar to the second suit on the same facts. 200 Fed. 44, 118 C. C. A. 272. The Supreme Court, however, reversed the judgment of the Circuit Court of Appeals, and affirmed that of the District Court. This it did upon the principle that there was not that identity of parties in the former action which was necessary to render the former suit and judgment a bar to the later suit. We are unable in principle to distinguish that case from the present suit. The fact that the plaintiff in the present suit obtained a decision in her favor on the cause of action involved in the suit which she brought before the state board, while in the Troxell Case the plaintiff was defeated in the first suit, can make no difference in the result, as the case turned upon the fact that there was not an identity of parties in the two actions.

[10, 11] Moreover, one suit is not a bar to another unless the "cause of action" is the same in both. The cause of the injury upon which the right of action is founded is not the cause of action itself, but is only one element in the cause of action. Parris v. Atlanta, etc., Ry. Co., 128 Ga. 434, 57 S. E. 692. Chief Justice Fuller, in Chesapeake & Ohio Ry. Co. v. Dixon, 179 U. S. 131, 139, 21 Sup. Ct. 67, 45 L. Ed. 121, defined the phrase "cause of action," saying that it "manifestly comprised every fact which plaintiff was obliged to prove in order to obtain judgment, or, conversely, every fact which defendants would have the right to traverse." A cause of action comprehends the primary right possessed by the plaintiff, and the corresponding primary duty resting upon the defendant, and the delict or wrong done by the defendant in breach of such primary right and duty. Pomeroy's Code Remedies (4th Ed.) §§ 347, 348.

[12] The cause of action is something distinct from the remedy or the relief sought. The remedy is simply the means by which the cause of action is satisfied. Lemon v. Hubbard, 10 Cal. App. 471, 102 Pac. 554. The cause of action seems to be the same, whether the injury occurs in interstate or intrastate commerce. But the remedy in the two cases is different. Whether the cause of action in the District Court and before the Pennsylvania state board be regarded as identical or not is, however, immaterial in this case, for the reason that the parties in the two proceedings are not the same. As was said by Mr. Justice Lamar, speaking for the court in Lyon v. Perin Manufacturing Co., 125 U. S. 698, 700, 8 Sup. Ct. 1024, 1025 (31 L. Ed. 839):

"It is well settled that in order to render a matter res adjudicata, there must be a concurrence of the four conditions, viz.: (1) Identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality in the persons for or against whom the claim is made."

In the present suit there was not identity of parties, and that is sufficient to make the doctrine of res judicata inapplicable. As in our opinion the plaintiff's intestate was engaged in interstate commerce at the time of his death, and as the proceedings before the Pennsylvania state board were not between the same parties, they therefore cannot estop the plaintiff from maintaining the present suit. Error was, in our opinion, committed in the court below.

Judgment reversed.