**BAKER, FENTRESS & CO. v. YOUNG.**

No. 4518.

Circuit Court of Appeals, Seventh Circuit.
Jan. 4, 1932.

Rehearing Denied Feb. 18, 1932.

Henry Fitts, of Chicago, Ill., and John B. Sanborn and Glen H. Bell, both of Madison, Wis., for appellant.

H. H. Thomas and C. G. Mathys, both of Madison, Wis., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

The action was on a note given to appellant, dated October 25, 1927, for $48,188.28, due in ninety days, signed by Vancouver Lumber Company, Keith, Kirby, and appellee. The suit was against appellee only, who, with Keith and Kirby, owned the corporate maker.

Two defenses were interposed: (a) That the note was given for an advance to be made by appellant under agreement that the note would be delivered only on condition that appellant would purchase certain maturing

interest coupons upon a large bond issue of the corporate maker, which had been obtained and marketed through appellant, and that appellant would hold the coupons, when so purchased, as security for the payment of note; but that instead of complying with its agreement to so purchase and hold them, appellant paid the coupons, and they were canceled, thereby depriving the makers of the note of the benefit of the security of the mortgage which had been given to secure the bond issue and the coupons; (b) that some time after the note had matured appellant entered into an agreement with appellee, whereby appellee should undertake to secure a reduction in the price of a tract of Alabama land which appellant was seeking to purchase for a client from one Hatton, the owner, who was holding it at $1,-000,000, and, if successful in securing reduction of the owner's price to $800,000, appellant would give appellee $25,000, would limit appellee's liability on the note to one-third, and apply the agreed compensation in its payment, paying appellee the difference. Appellee succeeded in obtaining reduction of the price to $800,000, and so, as he alleges, fulfilled his contract with appellant, notwithstanding the purchase of the property was never consummated.

Appellant denied the alleged condition of its purchasing and holding the matured coupons, and also the alleged agreement to reduce appellee's liability on the note and pay him $25,000 for the service of securing the reduction of price of the Alabama tract; and upon these issues the cause went to trial. Evidence was heard and the jury found for appellee, and judgment was entered on the verdict.

In these issues are involved unmixed questions of fact. Was it in fact agreed between the parties that appellant should not pay and cancel the coupons, but purchase and hold them as security for the note? And did appellant and appellee enter into the alleged subsequent agreement respecting the Alabama tract of land as stated in defense b?

It is the contention for appellant that upon these issues the evidence on behalf of appellee amounted at best to a scintilla, and that appellant's motion for a directed verdict at the close of all the evidence should have been granted. With this contention we do not agree. The evidence on behalf of appellee upon both propositions was positive, and standing by itself, unopposed by contrary evidence, would have supported the verdict.

It is insisted that it is unreasonable to believe that business men would have entered into such agreements, especially b. This may be so. It may not seem reasonable, but it was certainly not impossible. Just how certain appellant felt that the reduction of the price to $800,000 would insure the consummation of the deal whereby it also would have had a profit of at least $25,000, we cannot know. It was just about this time that financial disturbances were manifesting themselves, and it developed that the prospective purchaser of the land could not pay cash for it, as was originally contemplated, but requested time, which the owner was unwilling to grant.

Of course, if appellee's contract was fulfilled by securing the reduction in the price, his right to the agreed compensation was not affected by subsequent business conditions which caused the deal to fall through. It is to be noted that there is no dispute with respect to the agreement between appellant and appellee upon the contract, save only as to the element of whether or not appellee's agreed compensation would become payable only in the event that the sale went through. Appellant insists that this was the agreement, and appellee insists that it was not; an unalloyed issue of fact with the evidence thereon sharply conflicting.

Conceding that the burden of proof on both of the issues was upon appellee, and assuming even that were we the triers of fact we would have concluded that this burden was not sustained as to either issue, this court would not be justified in substituting its judgment for that of the jury and the court, who saw the witnesses and heard the evidence.

Substantial evidence in support of both defenses appearing in the record, we cannot find error in the denial of appellant's motion for a directed verdict in its favor.

Upon denial of appellant's motion for a directed verdict, appellant moved "that the court submit to the jury in separate verdicts the question of the defense upon the merits raised upon the alleged conditional delivery, and the plea in abatement in connection with the Hatton transaction, * * *." The motion was denied, and error is assigned on the ruling.

There is no federal practice requiring juries to make separate findings or to return special verdicts. Indemnity Ins. Co. of North America v. Moses (C. C. A.) 36 F. (2d) 219; Erie R. Co. v. Downs (C. C. A.)

250 F. 415; City of Milwaukee, Wis. v. Shailer & Schniglau Co., 91 F. 858 (C. C. A. 7). In this respect, the state practice is not binding on the federal courts. United States Mut. Accident Ass'n v. Barry, 131 U. S. 100, 9 S. Ct. 755, 33 L. Ed. 60; Spokane & I. E. R. Co. v. Campbell (C. C. A.) 217 F. 518. While in a proper case the court may make such submission, it is not a matter of right, but is within the court's discretion. Erie R. Co. v. Downs, supra; Grand Trunk Western Ry. Co. v. Lindsay, 201 F. 836 (C. C. A. 7); Toledo, St. L. & W. R. Co. v. Reardon (C. C. A.) 159 F. 366.

There is no ground for the contention that the court's discretion in this regard was abused. Had the jury experienced any difficulty or embarrassment as to these separate issues, the court was always available to them for such further direction as the exigencies might require. There can be no mistake or ambiguity about the verdict of the jury finding the issues for appellee.

Error is charged in the denial of appellant's motion for voluntary nonsuit presented after the close of the evidence and after the denial of its motion for a directed verdict, and before the argument. It is insisted that appellant then had absolute right to dismiss its action. The authorities are concededly uniform that the right of voluntary nonsuit is, by the Conformity Act (28 USCA § 724), made dependent upon the practice prevailing in the state wherein the federal court sits. Barrett v. Virginian Ry. Co., 250 U. S. 473, 39 S. Ct. 540, 63 L. Ed. 1092; Meyer v. Nat. Biscuit Co., 168 F. 906 (C. C. A. 7). It is apparent to us that in the state of Wisconsin the plaintiff does not have absolute right of dismissal after the evidence has been closed. Rohr v. Chicago, etc., Rd., 179 Wis. 106, 190 N. W. 827; Obermeier v. Milwaukee E. R. & L. Co., 177 Wis. 490, 188 N. W. 603. The statute of Wisconsin (section 270.24) providing that "The plaintiff shall have no right to submit to a nonsuit after the argument of the cause to the jury shall have been concluded or waived" does not assume to confer the right to the nonsuit at any time before that stage of the proceedings is reached. Obermeier v. Milwaukee E. R. & L. Co., supra. Whitted v. Southwestern Teleg. & Tel. Co., 217 F. 835 (C. C. A. Ark.), and Spies v. Union Pac. R. Co., 250 F. 434 (C. C. A. Neb.), construe like statutes. The slight change in the wording of the Wisconsin statute made in 1927 does not affect the question.

But it is contended that, even though nonsuit is not a matter of right, it is discretionary with the court to permit it, and that such discretion was abused in its denial in this case. Unquestionably situations might arise where it would become the duty of the court to permit the voluntary nonsuit, and its refusal would be error. This might be so where a plaintiff is greatly surprised by evidence which he is wholly unprepared to meet, but probably could meet upon another trial. Other instances might be readily imagined under which it would be unduly harsh to deny such a motion. But this is not here the case. The entire record on this subject (appearing in the margin [1]) indicates that the only reason assigned for asking the nonsuit was the dissatisfaction with the court's ruling denying the motion for a directed verdict and the motion for submission to the jury of a separate verdict on each of the two defenses. It seems clear enough that under the Wisconsin practice one may not, at that stage of the case, speculate upon the outcome of such motions, and thereafter insist that the court's adverse decision thereon sufficiently indicates an abuse of the court's discretion. Johnson v. Bailey et al., 59 F. 670 (C. C. Wis.); Rohr v. Chicago, etc., Rd., supra; Obermeier v. Milwaukee E. R. & L. Co., supra.

We find no basis for the contention of

---

[1] "Mr. Sanborn: We desire to move for a directed verdict on behalf of the plaintiff for the amount of the note sued upon, with interest unpaid, on the ground there is no sufficient evidence to go to the jury to sustain the defenses pleaded in the defendant's answer.

"The Court: The motion will be denied.

"Mr. Sanborn: We ask for an exception. We ask that the court submit to the jury in separate verdicts the question of the defense upon the merits raised upon the alleged conditional delivery, and the plea in abatement in connection with the Hatton transaction, so that the court may know whether or not, if the jury should bring in a verdict for the defendant, whether it would include the first defense or the defense in abatement. I think that can be done by submitting two verdicts and specifying in them which they are.

"Mr. Thomas: We ask that the case go to the jury upon the questions raised in the pleadings. I do not feel that the court would be authorized in submitting special questions unless there is some very definite understanding there will be no question raised about inconsistency of verdict.

"The court denied the motion of the plaintiff. To which ruling of the court the plaintiff then and there duly excepted.

"Mr. Sanborn: May it please the court, we move for a nonsuit.

"The Court: You do not mean a nonsuit?

"Mr. Sanborn: I do, a voluntary nonsuit, in view of the ruling of the court, the position taken by the court.

"Mr. Thomas: We object to the granting of a voluntary nonsuit now. We have gone this far with the case, and we would like to go to the jury and have the issues submitted to the jury.

"The court denied the motion of the plaintiff."

error in the direct examination and cross-examination of witness Kirby, nor in the court's charge respecting the Hatton transaction, and what we have already stated indicates that the alleged error in the court's charge with respect to the two defenses is groundless.

The judgment is affirmed.