J. Sebastian Maxwell, Respondent, *v.* Alexander Hamilton Apartments, Inc., Appellant.

First Department, January 15, 1926.

Brokers — real estate broker — action for commissions — complaint alleged that defendant agreed to accept ten-year second mortgage and $50,000 cash — plaintiff's proof was that defendant agreed to accept eight-year second mortgage — plaintiff failed to sustain allegations of complaint — evidence shows no meeting of minds of defendant and prospective purchaser — instructions — court unduly emphasized question of amount of cash payment — verdict in favor of plaintiff is against evidence.

A real estate broker cannot recover commissions on the theory that he had produced a purchaser ready, willing and able to purchase, where it appears that he alleged in his complaint that the owner was willing to accept a ten-year second mortgage and $50,000 in cash, but his proof was to the effect that the defendant agreed to accept an eight-year second mortgage, for the broker's proof did not sustain the allegations of the complaint.

Furthermore, the evidence shows that there was never a meeting of the minds of the owner and the prospective purchaser on the question of the mortgage and the cash payment.

The court in its charge unduly emphasized the importance of the amount of the cash payment and the effect of its charge was that the other terms of the contract were of little importance.

The verdict of the jury in favor of the plaintiff is against the weight of the evidence.

Appeal by the defendant, Alexander Hamilton Apartments, Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Bronx on the 5th day of May, 1925; upon the verdict of a jury.

*Lewis J. Feinstein* [*Milton R. Weinberger* of counsel], for the appellant.

*Bernard S. Deutsch* [*Louis Lande* with him on the brief], for the respondent.

Burr, J. The action is for broker's commissions. The plaintiff alleges in his complaint:

" VII. That heretofore and on or about the 23rd day of March, 1923, the said defendant, acting by and through the said Harry Burken, its president, duly employed this plaintiff as broker, to offer the aforementioned premises for sale and to find a purchaser for the said premises for the sum of $300,000, with $50,000 cash, and by taking said premises subject to a first mortgage in the sum of $150,000, payable about May, 1924, bearing interest at the rate of 5% per annum, and by such purchaser executing and delivering to the defendant, a purchase money second mortgage in the sum of $100,000, to be payable in installments of $5,000 per

annum, unpaid balance of principal to be due at the expiration of ten years from date of closing title."

The complaint further alleges that defendant agreed to pay the plaintiff commissions amounting to $3,600, and that thereafter plaintiff " did procure a person who was ready, willing and able to purchase said premises upon the terms of plaintiff's employment as hereinbefore set forth; " that plaintiff advised and apprised the defendant " that he did procure such a person who was ready, willing and able to purchase the premises upon the terms hereinbefore set forth and requested the said defendant to prepare a contract of sale embodying said terms; " but that defendant " did refuse to sell said premises for the sum of $300,000 pursuant to the terms and conditions of plaintiff's employment as hereinbefore set forth and did refuse to enter into a contract of sale with the person so procured by this plaintiff."

The defendant by its answer set up a general denial.

In his bill of particulars plaintiff stated:

" The agreement of employment of the plaintiff by the defendant was oral. It was made with Harry Burken, president of the defendant corporation."

Plaintiff's witness Charles W. Griswold testified substantially that he was a licensed real estate broker employed by the plaintiff, and " about two weeks before March 23, 1923," he had a conversation with Burken, the president of the defendant corporation, at the defendant's place of business. " I gave him my card and I said, ' My name is Griswold from Maxwell's office.' He says, ' Yes, you telephoned me this morning about another piece of property I have on Broadway, and I told you I would not sell it, but I have another apartment on the upper part of Broadway, on the northeast corner of 161st Street and Broadway that I would like to sell because I need money for my business.' And I said to him, ' Do you own that piece of property? ' He says, ' Yes.' And I said, ' Is this a corporation? ' He says, ' Yes, but I am the president of the corporation.' I then asked him for the price. He said it was a hundred by a hundred, six-story elevator, apartments upstairs and stores on Broadway. It had a first mortgage of $150,000 and was due March 1st, 1924. It had a gross rental at that time of $49,000. He said he would take $300,000 for the property, that is the price. He would take an eight-year second mortgage with $5,000 installments, in semi-annual payments, and that he wanted $75,000 in cash. I said, ' Well, is this open to a proposition? ' He says, ' Only the cash. I won't change the terms of my second mortgage and I will not change the price, but I will change the terms of the cash.' He says, ' Go and get me a

customer.' I says, ' I represent Mr. Maxwell and Maxwell always works on a full commission.' He says, ' What is it? ' I said, ' 2½ per cent for the first $40,000 and 1 per cent over that amount.' He says, ' What will that amount to? ' I says, ' $3,600 if the price is $300,000.' He says: ' Well, if you get my terms and get me what I want at the price,' he says, ' why shouldn't I give you the money. I will agree to give you the $3,600 if you will produce a man ready, willing and able to purchase the property on my terms.' ''

Griswold then testified that he reported back to plaintiff and '' had the particulars typewritten on Mr. Maxwell's stationery,'' procured a list of rentals, again communicated with Burken, and then found Van Dam, the alleged purchaser.

He also testified that he informed Van Dam that the defendant wanted $75,000 cash, an eight-year second mortgage, and that Van Dam told him the next day that the purchase price and the eight-year second mortgage were satisfactory, but that Griswold should ascertain from the defendant the lowest amount of cash that he would take. Griswold states that on March 23, 1923, accompanied by his employer, the plaintiff, he again went to Burken's office and had a conversation with him. '' I said that I had submitted the property to Mr. David Van Dam. * * * ' He will agree to your price and the terms of your mortgage, but he will not give you the $75,000 in cash.' Burken said, ' Well, what will he give me? ' I said, ' I don't know, you know who the man is, now you know, he is an operator, he wants to sell.' He thought it over for awhile and then he says, ' Do you think you can get $50,000 in cash? ' I said, ' I will try to.' He says, ' All right, I will let it go for $50,000 in cash, but you have got to hurry up, because as I told you I need the money. I want to do certain things in business and $50,000 will help out. While I would like to get 75, I will take the 50 to make a quick deal.' I said, ' How about the commission, will that affect the commission by your taking less cash? ' He says, ' No, it will not affect the commission, if I say I will accept certain terms I will not cut your commission. You are working for a living and so am I. I will pay the commission if you get what I want.' ''

Griswold also testified that Burken had said he would accept a thirty or sixty-day contract, $5,000 deposit, and a second mortgage maturing in eight years. He further testified that before the complaint was drawn he told the '' whole story '' to Mr. Deutsch, plaintiff's attorney.

On cross-examination he was asked: '' Q. I show you a copy of the original summons and complaint that was served on me and I call your attention to paragraph seven of the complaint,

the last line in which these words occur referring to the terms, ' A purchase money second mortgage in the sum of $100,000 to be payable in semi-annual installments of $5,000 each per annum, unpaid balance of principal to be due at the expiration of ten years from the date of closing title,' and I ask you is that what you told Mr. Deutsch that day? " He answered: " A. Well, there might have been a typographical error, it was eight years.  *  *  *  I don't know how it got there." He admitted he never received any authority in writing from the defendant. " Q. You never asked Mr. Burken to do it, did you?  A. I do not know.  I might have, but when I found I could not get it or I would incur his enmity if I did insist I figured the best thing to do was to try to make the sale.  *  *  *  I might have asked him and when I found he would not let me have it, then I dropped it, because I know if you insist on getting things from a stranger, he generally will tell you that the property is not for sale or tell you to get out of his office."

The plaintiff Maxwell testified that in the company of the former witness Griswold, he called at Burken's office and informed the latter that Van Dam had been procured as a purchaser of the property.  Burken said that he was sorry that the property had been sold because he had a better offer, and that he promised to let Maxwell know in a day or two; that Burken a day or two later called off the deal.

On cross-examination plaintiff did not remember if he had discussed the contents of the complaint with Griswold before he verified it.  Questioned as to the second mortgage and the contents of the complaint, reciting that it was to be for a term of ten years, he explained that he " did not look at it so close," and said: " Well, I suppose in my excitement I might have slipped over that at the time."

Plaintiff admitted that Van Dam was also a real estate broker; that the plaintiff never asked the defendant to accept a deposit to bind the contract; that the plaintiff never even asked Van Dam for a deposit or memorandum; that he never brought Van Dam to Burken's place of business; that he never even had Van Dam speak to Burken on the telephone; that Burken was never up to Maxwell's place of business, and that Burken had never met Van Dam.  Van Dam testified to being a real estate operator and to his offer to purchase the property for $300,000 of which $50,000 was to be in cash, and a second mortgage to mature in eight years, as well as to his ability to make good the offer.

Thereupon defendant moved to dismiss the complaint on the ground that the cause of action set forth in the complaint had not been made out, and on the further ground that the plaintiff had

made out no cause of action at all. The court ruled that he would hear the defense, and exception was duly taken by the defendant.

Defendant's president, Burken, testified: " He [Griswold] asked me about some property which I wanted to sell. I told him at that time that we had had a piece of property which we were anxious to sell for the simple reason that our condition in business was not so exceptionally good, and that if I could raise enough money so that I could use it for a purpose I needed in my business to pay my obligations which we always have done, I would like to sell one of them. We got talking about the property at 161st Street and Broadway and he asked me what I wanted for it, and I told him I wanted $300,000 for it for which I wanted $75,000 cash and the balance on second mortgage, with six or seven years, I really don't recall. He said he would let me know. He came back two or three times, I believe, before I even got a chance to talk to him, because I was quite busy. * * * The proposition that he brought me was $300,000 for which he said $50,000 would be in cash and the balance to be paid in ten years, installments of $5,000 a year. With that I told him that I had no use for it. It was a question of cash that I needed to put in my business, and with that he tried to come back two or three times again. He was in our office a good many times, but as far as difference in the price, it was all right, but the installments and the payment in cash, we did not agree and we never did agree and with that it ended up to the point where the papers were served on me. * * * There was never any name mentioned to me as to the buyer. * * * That was the only offer ever made me, $50,000 cash and ten-year payments on the second mortgage, and I turned it down. * * * I needed more cash for my business and that was the only reason I wanted to sell." The witness denied that he ever reduced or changed his price from $75,000 to $50,000 cash. " I did not change my mind about anything. I told them what my price was." In answer to a question by the court he said: " My terms were always $75,000 cash and $300,000, and they always came up with a $50,000 cash proposition, and I told them I would not take it and their terms on the second mortgage that they offered me, ten years, and I refused it and that was the only reason that the transaction did not go through."

Fannie Gouldsmith, a witness for defendant, testified that she was Burken's bookkeeper; that she had seen both Maxwell and Griswold in her employer's office; and that she overheard Burken tell Griswold the price he was asking for the house; that whenever the terms were discussed, Burken had insisted upon $75,000 cash.

At the close of the whole case defendant renewed the motion

to dismiss made at the end of plaintiff's case. " The Court: I will let it go to the jury."

In *Gallagher* v. *Dullea* (199 App. Div. 119, 120) the Appellate Division, Third Department, said: " It has been held that commissions on the sale of real estate are not earned until the minds of the buyer and seller meet, not only in respect to the price, but also in respect to the terms of the sale and all the incidents of the transaction which must be worked out and understood between them. (*Strout Farm Agency, Inc.*, v. *DeForest*, 192 App. Div. 790; *Haase* v. *Schneider*, 112 id. 336; *Arnold* v. *Schmeidler*, 144 id. 420, 427; *Peace* v. *Ross*, 123 id. 611; *Backer* v. *Ratkowsky*, 137 id. 559.) In *Haase* v. *Schneider* (*supra*) commissions were refused merely because the parties had not agreed on the time when the transaction was to be closed, the seller insisting on eleven days and the purchaser on thirty. Applying the principle of those cases to the present case it seems quite clear that the plaintiffs have failed to establish a cause of action. * * *

" When the contract of the plaintiffs was rescinded they had merely procured a prospective purchaser who was willing and able to pay $4,000 on account of the purchase price and secure the balance of the purchase price by some kind of a mortgage. The plaintiffs were not, however, entitled to their commissions until the defendant had agreed with such purchaser on all the essential details of the transaction. This has never occurred and the defendant was, therefore, within his rights in rescinding the contract, as by its terms he was permitted to do."

In *Sibbald* v. *Bethlehem Iron Co.* (83 N. Y. 378) it was held that " the duty assumed by the broker is to bring the minds of the buyer and seller to an agreement for a sale, and the price and terms on which it is to be made, and until that is done his right to commissions does not accrue; " and the authority of that case, or the correctness of the rule deduced, has never been questioned. (*Donovan* v. *Weed*, 182 N. Y. 43, 46.) The proposed purchaser never met the defendant. The plaintiff swears in his complaint that the second mortgage was to run for ten years, and on the trial testified it was to run for eight years. Defendant swears the proposition submitted by plaintiff at all times contemplated $50,000 in cash and a ten-year second mortgage, and that he refused to accept the same; that he wanted $75,000 cash and plaintiff's best offer was $50,000. There was no agreement, no meeting of the minds regarding the second mortgage either as to the term of years it was to run, the manner of payment or the rate of interest.

23

The evidence does not show such meeting of the minds "in respect to the terms of the sale and all the incidents of the transaction," as is required by this court in *Gallagher* v. *Dullea* (*supra*).

Defendant asked the court to charge "that it is an essential part of any duty which the plaintiff . assumed not only to get a purchaser at the said offer of $50,000 in cash, but also to comply with all the other terms and conditions referred to in the complaint. The Court: I say so, but I reiterate to you that the heart of hearts in this complaint was whether it was $50,000 or $75,000. If there is a question in your mind as to the eight years or ten, or any other discrepancy and you believe that the plaintiff has not presented anything essential respecting the contract as it was uttered by the defendant, then the plaintiff is not entitled to a verdict. Mr. Frank: I except to your Honor's refusal to charge as requested. The Court: I am telling the jury that if they find that in any essential respect the contract was not fulfilled by the plaintiff then the plaintiff is not entitled to a verdict. Mr. Frank: I asked your Honor to charge that in paragraph seven of the complaint it is alleged that one of the terms upon which the plaintiff was engaged is that the second mortgage should be payable as to the balance of principal at the expiration of ten years from the date of closing title. The Court: I read that and commented upon the fact that there was a discrepancy between ten years and eight years and that involves the rest because in that seventh paragraph there is a statement that semi-annually there be paid, I suppose by way of amortization $5,000, practically $10,000 a year, which at the end of ten years would be $100,000."

I think the effect of this was to unduly accentuate the cash payment as being the most important feature of the proposed sale and the jury may well have believed, notwithstanding the later statement of the learned trial justice as to the other terms alleged in the complaint, that such other terms were of small moment as compared with the cash payment. Plaintiff failed to prove the agreement as alleged in the complaint. No amendment of the complaint was ever applied for or allowed. The agreement testified to by plaintiff on the trial by which the second mortgage was to run for eight years was not the agreement alleged in the complaint. The ten years alleged in the complaint as the duration of the second mortgage, to which plaintiff alleged defendant had agreed, is the exact duration of the second mortgage which defendant swears the plaintiff offered and which defendant rejected. It is clear there never was any meeting of the minds of the parties upon the agreement as alleged in the complaint, and that admittedly plaintiff failed to perform in accordance with the terms of that alleged

agreement.   This of itself would bar recovery.   (*Silvert* v. *Kommel,* 138 App. Div. 229; *Herron* v. *Cameron,* 144 id. 43; *Heurich* v. *Sullivan,* 281 Fed. 599.   And see *Jepsen* v. *Marohn,* 22 S. D. 593; 119 N. W. 988.)

The verdict is against the weight of the evidence, and the judgment appealed from should be reversed and a new trial granted, with costs to the appellant to abide the event.

CLARKE, P. J., DOWLING, MERRELL and McAVOY, JJ., concur.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event.