LEOPOLD D. STERN, Respondent, v. BRISTOL CORPORATION, Defendant, and THEODORE E. TOLSON, JR., et al., Appellants.

First Department, March 15, 1948.

*George J. Conway* of counsel (*Benjamin Pepper*, attorney), for appellants.

*Sidney R. Rossiter* of counsel (*Abraham J. Halprin* with him on the brief; *Samuel Meyers*, attorney), for respondent.

DORE, J.   In an action based on an oral contract for brokerage commissions plaintiff allegedly earned by procuring a purchaser of the corporate stock the individual defendants owned in defendant corporation, defendants appeal from judgment of $18,497.66 in plaintiff's favor after trial before the court and a jury.

The complaint alleged that the three individual defendants, owners of all the outstanding stock of the Bristol Corporation which owned and operated a hotel in the borough of Manhattan, city of New York, employed plaintiff in July, 1946, to procure a purchaser for the hotel premises and its food and liquor stock; that the sale was to be made in the form of a transfer of the stock certificates owned by the individual defendants, and plaintiff was to receive the customary broker's commission on the real estate and 5% on the sale of the food and liquor; that plaintiff thereafter produced a purchaser ready to buy the premises and the food and liquor on terms mutually satisfactory; viz., $550,000 cash for the premises and contents, over two existing mortgages, as well as the purchase of all food and liquor stocks at $30,000; that defendants refused to sell upon the terms agreed, and plaintiff accordingly earned commissions of $17,367.50 at real estate board rates for the premises and $1,500 at 5% on the $30,000 representing the food and liquor stocks.

The verified bill of particulars stated the agreement was oral and repeatedly specified that the exact date of the contract of employment was between the 16th and 23d days of July, 1946. At trial, however, over objection the court granted plaintiff leave to change the date of the alleged employment from July to February, 1946.

The Bristol Corporation owned Hotel Bristol and annex in the borough of Manhattan, city of New York. All the corporate stock of the hotel company was owned by the three individual defendants, two brothers and their mother, the two brothers Theodore and Alfred Tolson owning 66 2/3 shares each and

their mother Stella 42 shares. Indorsed on the certificates was the notation that the right to sell was subject to a specified agreement. Theodore was president of the corporation, Alfred vice-president and an attorney was secretary.

Concededly, the stock and business was thereafter sold for $550,000 cash under a written memorandum and a formal contract of sale to another purchaser, Rappaport, through another broker, Korzenski, who agreed with the attorney to share the brokerage commission on a 50% basis. Plaintiff contended, and a considerable part of the trial was devoted to an effort to prove, that the reason plaintiff's claimed agreement was not executed, was that defendants' lawyer asked plaintiff to split his commissions on a 50% basis and plaintiff was willing and agreed to give only one third, whereas the other broker split the commissions with the attorney on a 50% basis. Plaintiff also endeavored to show that the attorney did not keep his 50% but shared it in part with defendants.

Plaintiff testified that his oral offer of $550,000 all cash was accepted on July 23, 1946. But on July 26th, plaintiff wrote a letter to defendants through which, he stated at the trial, he conveyed to them his " view of the entire transaction ". That letter was an offer to purchase for $600,000 over two mortgages (first mortgages on separate parcels) of $550,000, with $350,000 cash and a $250,000 second mortgage. The writing made no reference whatever to any offer, much less an acceptance of $550,000 all cash. Again on August 2d plaintiff wrote defendants:

" Re; Sale of hotel Bristol Corporation Stock

" Confirming our conversation over the telephone of today. My Client (Syndicate) represented by D. Berg, are ready to consummate Deal, when-ever convenient.

" ($600,000 with $350,000 Cash) Negotiated."

In that letter plaintiff referred to the " aftermath " of a cash deal as " of no interest to change to ". These letters, written after plaintiff's claimed acceptance of an oral agreement to sell to plaintiff's purchaser for $550,000 all cash, tended to destroy plaintiff's contention of the prior oral offer and acceptance.

Plaintiff's oral testimony would raise an issue for the jury of employment by the two sons; but there was no proof of employment of plaintiff by the mother, who owned a substantial part of the stock to be sold. Plaintiff never met or communicated with her, and no authority to act for her was established.

The jury in its verdict found as a matter of fact that plaintiff did not perform the contract as pleaded and testified to by

plaintiff. The court charged that if the jury found for plaintiff they would find first against the three individual defendants in the sum of $17,367.50 " and against all defendants in the sum of $1,500 ", and that otherwise the verdict would be for defendants. The jury however returned a verdict in favor of plaintiff for $17,367.50, but on plaintiff's claim to the $1,500 the jury's verdict was in favor of defendants. Accordingly, the jury itself found as a fact that plaintiff did not establish the claimed agreement.

The court's charge did not adequately present the issues to the jury and there were errors in the instructions, duly excepted to, that would require reversal in any event. But it is unnecessary to discuss these errors or other contentions made in the briefs, as we reach the conclusion that the judgment is erroneous and should be reversed and the complaint dismissed on the ground that plaintiff failed to prove an agreement on all the terms essential to the contract claimed.

Plaintiff's alleged purchaser was a syndicate consisting of six persons including one Berg, syndicate's attorney. Plaintiff testified that in February, 1946, on behalf of his syndicate he made an offer of $600,000 over the existing mortgages, with $350,000 cash and $250,000 on a purchase money second mortgage. He also testified that the proposed sale was " of real estate with one exception, that they liked to sell the stock for a matter of income tax and bookkeeping purposes ", that the commissions were to be on the real estate at real estate board commission rates but the defendants " want[ed] to sell the stock for a matter of bookkeeping ". Plaintiff did not seek recovery on the $600,000 offer. He claimed that thereafter on July 23, 1946, defendants through their agents the secretary-attorney and Theodore Tolson orally agreed to sell to plaintiff's syndicate for $550,000 all cash over the mortgages.

From plaintiff's own testimony and, indeed, the whole record, it is clear that what the parties had in mind in the negotiations was the sale and purchase of a going hotel business through the sale of all the shares of stock of the hotel corporation. When plaintiff testified defendants agreed on July 23d to sell for $550,000 he was asked: " Q. And that is the only term you had was 550—none of the other details were worked out at all? A. None at all." That was at the date on which plaintiff claimed fully to have brought the minds of the parties together on a definite agreement for the sale of the stock and hotel business. Berg, attorney for the syndicate, testified that a contract of this nature " couldn't be completed in less than two or three days,

in any event." " Q. You mean there would be that many details to be worked out? A. That's right, * * *."

One term essential to any such agreement to transfer a going hotel business through the transfer of all its stock is the date on which the financial status of the corporation is fixed by the parties for the purpose of such transfer. Without a definitive agreement on such date, plaintiff's syndicate could have no idea what assets they were getting and what liabilities, fixed and contingent, they were assuming; nor could defendants know what they were giving or getting in the transaction. The evidence fails to show even a claimed agreement on this indispensable term of the special type of contract alleged and relied on, or indeed on other terms important in such a transaction.

In contrast to plaintiff's claimed oral agreement, the sale that was actually made to Rappaport, who subsequently purchased the stock and business, was made through a preliminary written memorandum of agreement and a formal written contract in which the item of price was only one of the essential terms. Thus a date fixing the financial status of the corporation was mutually agreed upon; and although that agreement of purchase and sale was made August 9, 1946, the date agreed upon to determine the financial status of the business sold was May 31, 1946. There was also agreement with respect to disposition of dividends and net profits, taxes accruing and taxes to be refunded, outstanding employment contracts, etc.

If defendants were suing plaintiff's syndicate to enforce the alleged contract ($550,000 cash over the mortgages), surely the buyer could contend the agreement was not enforcible as no date for fixing the financial status of the business was made and accordingly the parties had no definite agreement as to the assets and liabilities, fixed and contingent, of the business transferred. For example, if a contingent or fixed liability of several hundred thousand dollars attached on a given date, the buyer would surely be able successfully to contend that it could not be compelled to buy as of a date arbitrarily fixed by the seller that might impose such liability on the purchaser. If defendants as sellers could not enforce the claimed oral agreement against the alleged buyer, the buyer may not enforce it against the sellers. Unless both are bound, neither is bound.

In *Thompson & Co., Inc.,* v. *New Madison Square Garden* (225 App. Div. 521–522) this court, quoting *Gallagher* v. *Duella* (199 App. Div. 119) stated the rule applicable as follows: " It has been held that commissions on the sale of real estate are not earned until the minds of the buyer and seller meet, not only in

respect to the price, but also in respect to the terms of the sale and all the incidents of the transaction which must be worked out and understood between them.''

In *Williams & Co., Inc.,* v. *Groveville Corporation* (256 App. Div. 683) this court, quoting *Arnold* v. *Schmeidler* (114 App. Div. 420) held that '' the broker's commissions are not earned until the customer produced by him reaches an agreement with the owner upon the price and terms upon which a sale can be made. This of course, does not mean that a contract in writing must be signed by the parties, but that their minds must meet not only upon the price but upon the essential terms of an agreement to purchase.''

In *Haase* v. *Schneider* (112 App. Div. 336) the Second Department reversed a judgment in favor of plaintiffs, saying: '' * * * the parties must be brought to an agreement, not alone as to price, but as to the terms of exchange, the time of taking title and all the incidents of the transaction. The minds of the parties must meet in a contract, the details of which are worked out and understood between them, and because the plaintiffs have failed to show such a consummation of their labors, the judgment appealed from must be reversed.''

The claim here asserted was not the usual claim for commissions on a sale of real estate as such. It is clear on plaintiff's pleading and proof, as well as defendants' testimony and exhibits, that what the parties had in mind was the purchase and sale of a going business; the sale of the certificates of stock was the form which the transaction took for tax purposes. On this record plaintiff wholly failed to prove any definite agreement on even a bare minimum of the terms essential to the contract claimed, and accordingly failed to prove that the minds of the parties met and plaintiff was not entitled to any commissions.

The judgment appealed from should be reversed, with costs and the complaint dismissed, with costs.

CALLAHAN and VAN VOORHIS, JJ., concur; COHN and SHIEN-TAG, JJ., dissent in part and vote to reverse the judgment and grant a new trial upon the ground that the verdict is contrary to the weight of the credible evidence.

Judgment reversed, with costs to the appellants and the complaint dismissed, with costs. Settle order on notice.