Arthur Waohtel, J.
This is an action by a real estate broker for commissions. Plaintiff claims that the defendant at first asked $26,000 as the purchase price of his home of which *569 $8,000 would have to be cash. He advised the plaintiff that he had a mortgage in the amount of $7,000. Plaintiff testified that the defendant told her he would pay this mortgage off and get a new first mortgage for the balance above the cash and that he would take this new mortgage personally. She further testified that he agreed to take 5% interest and 3% interest on the principal a year. She further testified that she obtained an offer of $22,000 with $10,000 cash but this was rejected although the defendant informed the plaintiff to see if she could get $23,000. Plaintiff then produced a prospective purchaser who offered $23,000 with $10,000 cash and the balance by a mortgage that the defendant was to take back. She further testified that the defendant told her to come back when his daughter would be present. She obtained a written binder signed by the prospective purchaser for $23,000 and $10,000 cash, 5% interest and 3% amortization for 10 years. She further testified that when she saw the defendant at the appointed time at his daughter’s home, everything was satisfactory but when she asked him to sign a binder he said he would rather go into contract the next morning and asked her to get in touch with his lawyer. However, no appointment for the contract was ever made because the defendant’s attorney advised her that ‘ ‘ there was no deal. ’ ’ The plaintiff testified that she had discussed the terms of the first mortgage with the defendant and that he wanted to pay it off and take back the new first mortgage and that he agreed that that new first mortgage would be on the basis of 5% interest, 3% amortization for 10 years. In the examination before trial of the plaintiff, she stated that the defendant told her he had a first mortgage in the amount of $7,000 and that he would pay it off and assume the new first mortgage but admitted that she did not discuss the terms of the prospective new first mortgage with the defendant and that the defendant had said that his attorney would take care of the details and she further admitted that she did not discuss the details of the new first mortgage with the defendant’s attorney as to the length of term of the prospective new first mortgage or as to the rate of interest or as to the method of payment. However, she insisted repeatedly that defendant agreed to take $23,000, $10,000 cash, 5% interest plus 3% amortization for 10 years and that was the sum total of the discussion that she had with the defendant with respect to the terms of the prospective sale. The details, she admitted, were referred to the defendant’s attorney, whether the payments were to be made monthly or quarterly, and in this regard, defendant stated he would talk to his attorney; that he didn’t understand, *570 ‘‘ monthly or quarterly.” Mr. Simon Feder, the prospective purchaser, corroborated this testimony and stated that, “ Nothing was figured out yet. Mrs. Harper said we would work it out on the contract. On taking the title, they give the details. ’ ’ The defendant admitted that he received an offer of $23,000 but denied that he had agreed to accept it and further stated that he couldn’t do anything before he had a talk with his family. He further testified that he had no discussion about any second mortgage, never offered to pay off the first mortgage and that he said he wanted $10,000 cash which, with the existing $7,000 mortgage, would come to $17,000, and that he was willing to take back the balance in a second mortgage. He further testified that he had advised the plaintiff how much interest and amortization he was paying and that the details as to the second mortgage were to be left to his attorney. The plaintiff, recalled to the stand, repeated her previous testimony. On cross-examination she testified that she had received a binder signed by the prospective purchaser and that the binder set forth that she had received $100, the balance to be paid on contract and the mortgage to be taken by the defendant at 5% interest, 3% amortization for 10 years, “ if satisfactory.” She admitted that the defendant did not say yes or no as to the method of payment, that is, whether it was to be in monthly payments or quarterly payments, and the defendant said that his attorney would set up the time and the terms of the mortgage and further stated that, ‘ ‘ I had agreed on everything except the terms of the mortgage and how it was to be paid.” The defendant’s daughter, Mrs. Mary Stein, testified that the plaintiff brought a binder for her father to sign but he said he would not sign until “ we talked it over and see our attorney.”
The court is of the opinion that, upon all the evidence, the plaintiff has failed to sustain her burden of proof. The relative rights and duties of a real estate broker as the basis of his claim for compensation have been set forth in the learned opinion of Mr. Justice Finch in the case of Sibbald v. Bethlehem Iron Co. (83 N. Y. 378). As Mr. Justice Finch said in the Sibbald case: “ The duty he undertakes, the obligation he assumes as a condition of his right to demand commissions, is to bring the buyer and seller to an agreement. In that all the authorities substantially concur, although expressing the idea with many differences of phrase and illustration. The description and definition of a broker involves this view of his duty. Story says, ‘ The true definition of a broker seems to be that he is an agent employed to make bargains and contracts between other persons in matters of trade, commerce or navigation for a com *571 pensation commonly called brokerage.’ (Story on Agency, § 28, p. 25.) In Pott v. Turner (6 Bing. 702, 706) a broker is more tersely, and quite accurately, described as ‘ one who makes a bargain for another and receives a commission for so doing. ’ In Barnard v. Monnot, it was said that the duty of the broker consisted in bringing the minds of the vendor and vendee to an agreement. (16 How. Pr. 440.) In Wylie v. Marine National Bank (61 N. Y. 416) it was held that to entitle the broker to commissions, he must produce a purchaser ready and willing to enter into a contract on the employer’s terms. This implies and involves the agreement of buyer and seller, the meeting of their minds, produced by the agency of the broker. In Moses v. Burling (31 N. Y. 462) it was declared that the authorities clearly establish the proposition that until the broker has faithfully discharged the obligation assumed in the contract with his principal, he is not entitled to his agreed commission, and that obligation is fulfilled only when he produces a party ready to make the purchase at a satisfactory price. In Glentworth v. Luther (21 Barb. 147) it was declared that commissions were earned when the broker produces to his principal a party with whom the owner is satisfied, and who contracts for the purchase at an acceptable price * * But in all the cases, under all the varying forms of expression, the fundamental and correct doctrine is, that the duty assumed by the broker is to bring the minds of the buyer and seller to an agreement for a sale, and the price and terms on which it is to be made, and until that is done his right to commissions does not accrue. (McGavock v. Woodlief, 20 How. [U. S.] 221; Barnes v. Roberts, 5 Bosw. 73; Holly v. Gosling, 3 E. D. Smith, 262; Jacobs v. Kolff, 2 Hilt. 133; Kock v. Emmerling, 22 How. [U. S.] 72; Corning v. Calvert, 2 Hilt. 56; Trundey v. N. Y. & Harf. Steamboat Co., 6 Robt. 312; Van Lien v. Burns, 1 Hilt. 134.) ” (Pp. 381, 382.) Accordingly, it has been held that mere agreement as to price and down payment was insufficient without further proof of an agreement as to the amount, interest, amortization and terms of the mortgage (Williams v. Nielsen, 206 Misc. 172) and that commissions are not earned “ until the minds of the buyer and seller meet, not only in respect to the price, but also in respect to the terms of the sale and all the incidents of the transaction which must be worked out and understood between them.” (Gallagher v. Dullea, 199 App. Div. 119, 120 and followed in Thompson & Co. v. New Madison Square Garden Corp., 225 App. Div. 521, and Stern v. Bristol Corp., 273 App. Div. 371, 375.) As the court said in Haase v. Schneider (112 App. Div. 336, 338) “ the parties must be brought to an agree *572 ment, not alone as to the price, but as to the terms of exchange, the time of taking title and all the incidents of the transaction. The minds of the parties must meet in a contract, the details of which are worked out and understood between them”. In Maxwell v. Hamilton Apts. (215 App. Div. 348) it was held that the failure of the prospective seller and purchaser to agree on the period and rate of interest of a second mortgage prevented a finding that there was a meeting of the minds. In Arnold v. Schmeidler (144 App. Div. 420) the same result was reached where there was a failure to prove any agreement as to whether the owner might hold the amount of the interest on the mortgage which would accrue at the time of the passing of title as further security for the payment of the mortgage. In the Restatement of the Law of Agency (§ 445, p. 1040) it is stated that, “ When the principal has furnished the broker with only part of the terms, with the understanding that further details are subject to negotiation between the principal and the customer when found, the principal is free to terminate such negotiation without liability to the broker. The principal’s promise to pay the broker a commission does not become binding unless the principal and the customer reach a present definitive oral or written agreement. The broker has not earned his commission, even though the principal and the customer have drafted a memorandum of their proposed agreement, if they did not intend such proposed agreement to be presently binding upon them and hence reserved signature of the memorandum for a later occasion; at this point if either the principal or customer withholds such final consent, no commission is due. ’ ’
There is no sufficient proof in the case at bar to warrant the court in finding that the defendant terminated the plaintiff’s authority in bad faith and as a mere device to escape the payment of the broker’s commissions, in which case Judge Finch pointed out the vendor may not escape liability (Sibbald v. Bethlehem Iron Co., 83 N. Y. 378, 384, 385, supra). However, as Judge Finch further pointed out, “ But if the latter (the seller) acts in good faith; not seeking to escape the payment of commissions, but moved fairly by a view of his own interest; he has the absolute right before a bargain is made while negotiations remain unsuccessful, before commissions are earned, to revoke the broker’s authority ”. (P. 384.)
Accordingly, complaint is dismissed.