Birdie Amsterdam, J.
This action is brought to recover commissions alleged to have been earned by the plaintiff as broker for the defendant in procuring acceptance of an application for a first mortgage. Defendant contends that the right to and the payment of a commission depended upon (a) a firm and sound commitment upon which building loan financing could be obtained, (b) the procuring of leases satisfactory to defendant, (c) the granting of a permanent mortgage loan by the lending institution, and the actual payment of the mortgage loan proceeds to defendant; but that these conditions were never met.
The evidence established that on June 22, 1956, by agreement in writing, defendant corporation employed plaintiff corporation to obtain an acceptance from a responsible lending institution of defendant’s application for a first mortgage of $1,300,000 for a period of 19 years, bearing interest at 4%%, and amortization of 2%%, interest and amortization payable in constant quarterly payments covering certain property in Springfield, Massachusetts. The agreement is in writing and provides as follows: “If you are successful in obtaining acceptance by an institution of the above application, or such other amount or on such other terms as are acceptable to-us, we agree to pay you a commission of 1% net of the amount of the loan agreed to be made and, in addition, we agree to pay attorney’s fees and all the expenses usually required by the lender. This authorization expires sixty days from date.”
'By letter dated September 17, 1956 defendant extended the period of employment for 60 days from August 20, 1956.
Subsequently, in a letter dated December 14, 1956 directed to Teachers Insurance and Annuity Association of America (hereinafter referred .to as TIAA), defendant designated plaintiff as its authorized broker to obtain from TIAA a commitment *86 covering a first mortgage loan of $1,100,000 on the subject property. It sets forth that the loan is to be payable at the rate of 9% per annum constant in equal monthly installments of which 6% is to apply to interest and the balance to reduction of principal. It further recites that the defendant is permitted to prepay the unpaid balance at any time after five years on payment of a penalty of 3% of the unpaid balance, and that written acceptance or declaration by TIAA is to be received on or prior to December 21, 1956. It also states that a check for $11,000 is enclosed as a standby deposit; that in the event that TIAA declines this loan application, the $11,000 is to be returned to defendant; that in the event TIAA issues a commitment with the terms as therein outlined, defendant is to deposit an additional $11,000 with TIAA; and if and when this loan is closed with defendant, the total stand-by deposit of $22,000 is to be refunded to defendant.
In a letter dated December 18, 1956, addressed to defendant, TIAA approves defendant’s application for a mortgage loan, subject to certain terms and conditions. It sets forth the amount: $1,100,000; interest rate: 6% ; term: 18 years 5 months; repayment terms: monthly installments of $8,250 each to be applied first to interest and the balance to principal; prepayment : after first five years upon payment of an additional sum equal to 3% of the amount so prepaid. It then specifies certain conditions, each of which is required to meet with TIAA’s satisfaction. These conditions are concerned with appraisal of the property indicating a value of not less than $1,650,000; plans and specifications; survey; insurance policies, their forms, kinds and amounts; completion of construction and all municipal certificates; leases described in schedule and all other leases and renewals, extensions or replacements thereof; assignment of leases; tenants’ estoppel statements; loan instruments and supporting papers; compliance with all terms of the letter; compliance with all present and future governmental regulations and, approval by its counsel of all instruments and papers. Only as to matters pertaining to title, and the form, substance and execution of instruments and papers, it provides that approval by TIAA’s counsel would not be unreasonably withheld.
On January 7, 1957 defendant accepted TIAA’s letter dated December 18, 1956 by causing its signature to be affixed thereto. On January 8, 1957 the letter dated December 18, 1956 was amended with the following conditions: “ (1) In the event the appraisal value is less than the $1,650,000 as now required, the loan will be based upon 66% % of the final value. In such event the loan is so reduced and the new loan amount is unsatisfactory *87 to you, we will, upon your written notification to that effect, cancel the commitment and refund in full the $22,000 stand-by deposit. * * * (2) In the event any lease, or leases, as required is found to be unsatisfactory or otherwise unacceptable, with no fault on your part, so as to render this letter of commitment ineffectual, we will, upon your request, cancel the commitment and refund your stand-by deposit in full.”
The evidence also established that two checks were received by TIAA to its order, each in the sum of $11,000, dated December 14, 1956 and December 21, 1956, respectively. They bear bank deposit stamp dates of December 20, 1956 and January 10, 1957, respectively.
On defendant’s behalf, its secretary testified that on or about December 21, 1956, at a conference at TIAA’s offices, he and plaintiff’s two vice-presidents were present; that at the time they discussed changes in the letter dated December 18, 1956; that one of the plaintiff’s officers asked for a letter to justify its employment, and they discussed the fee and method of payment; that they agreed upon a fee of 1% of the mortgage loan based on the money that TIAA would actually pay out to defendant and it would be payable out of the final payment by TIAA to defendant; that thereafter the letter dated December 14, 1956 was prepared and he signed it. This was denied by plaintiff’s witnesses.
The record further established that there has been no mortgage loan closing, that no loan was ever procured, that necessary' leases could not be obtained, that defendant did not proceed with the construction of the shopping center; that a trial court on February 15, 1960 awarded defendant judgment, in its favor against TIAA in the sum of $22,000, for the return of the stand-by deposit and stated: ‘5 The fact is that the plaintiff [Boston Road Shopping Center, Inc.] did act in good faith, did want the project to go forward, did try to get the leases, was unable to do so. Everybody agrees that the inability to procure the leases was at the bottom of the very transaction, that there could not be a mortgage, unless there were these leases. Plaintiff being unable to get the leases, it told that to the defendant and asked for the return of the money. I think it is entitled to the return of the money, and that being so I am going to direct a verdict for the plaintiff for the full amount.”
Plaintiff urges that it performed all that it had been hired to do and that its right to compensation was fixed and determined as 1% of $1,100,000, or the sum of $11,000, and in support of its claim as to the terms of employment, it relies on the documents dated June 22, September 17 and December 14, 1956.
*88 An examination of these documents reveals the following: The agreement of June 22, 1956, extended by the letter of September 17, 1956 by its own terms, expired on October 20, 1956. In the letter dated December 14, 1956 nowhere is there set forth the terms and conditions of an agreement to pay commissions to plaintiff. Nowhere does it appear that the terms and conditions of the original agreement are extended or made a part of this instrument. The same situation obtains with respect to the documents dated December 18, 1956 and January 8, 1957. Furthermore, the December 14 letter describes a mortgage transaction which is totally different from the mortgage transaction described in the June 22 agreement. , Moreover, the December 18 document describes a conditional agreement to make a mortgage loan, whereas the December 14 letter describes an unconditional agreement for such purpose. Additionally, the letter of January 8, 1957 states that the so-called commitment of December 18, 1956 is ineffectual under certain conditions.
There is a failure of proof that the agreement of June 22 to pay commissions, which expired on October 20, was extended on the same terms and conditions to apply to the transaction with TIAA. Assuming arguendo that it was extended on the same terms and conditions, but was modified as'to mortgage loan amount and manner of payment, nevertheless, plaintiff has failed to show that it procured what it undertook to obtain in the original agreement as extended and modified.
Plaintiff has failed to prove that it procured an enforcible agreement to lend; that defendant and TIAA had a meeting of the minds on all essential terms. The document dated December 18 evidences many conditions upon which TIAA could refuse to make the loan, unless completely satisfied. Hence what plaintiff procured was not an enforcible agreement to make a loan, but merely an offer to make a loan subject to certain conditions, and defendant’s acceptance thereof was likewise conditional — for if defendant could not get leases, if defendant was not satisfied with the amount of the mortgage loan, defendant did not have to take the deal — the contract was to become ineffectual and defendant was to get back its stand-by deposit. Assuming arguendo that plaintiff procured an enforcible agreement to lend, that defendant and TIAA had a meeting of the minds as to all essential terms, nevertheless plaintiff did not make out a case because such agreement to lend was conditional and plaintiff’s right to a commission was dependent upon such agreement becoming unconditional and consummated by the *89 granting of a mortgage loan. There is no such showing. The contract therefore could not be enforced.
Where a broker has not procured an enforcible contract, he is not entitled to obtain any commission from his principal (Matter of Smith v. Department of State, 3 A D 2d 954). The rule of law requires that there must be mutuality of obligation to effect a binding contract, and, if the promise is vague and indefinite, or if one of the promissor parties is free to perform it or not, as he wills, it is illusory and will not be enforced (Smith v. Diem, 223 App. Div. 572, affd. 249 N. Y. 590). Unless both parties to a contract are bound so that cither can sue for a breach of the contract neither is bound.
According to the conditions contained in the December 18, 1956 and January 8, 1957 instruments, it appears that both defendant and the lending institution had to be satisfied as to essential conditions and that if either were unsatisfied it would not have to proceed any further. Such relationship did not create a binding obligation upon either defendant or the lending institution to proceed to close the mortgage loan.
Under settled principles, the contract phrase “ satisfactory to ’ ’ has been interpreted as meaning 11 actually satisfactory ’ ’ to the party “personally” (Wynkoop Hallenbeck Crawford Co. v. Western Union Tel. Co., 268 N. Y. 108). The court must give full effect to the unequivocal language of the document where such intention is clearly expressed (Rockcliffe Realty Corp. v. Mutual Life Ins. Co., 50 N. Y. S. 2d 851). The December 18, 1956 and January 7, 1957 letters left essential elements of the transaction open. Except for the amount, interest rate, term and repayment provisions, the form and content of the loan instruments and supporting papers were not determined, but were left to the discretion of the lending institution. The forms, kinds and amounts of the insurance policies were also indeterminate. The terms and conditions and form of the leases were not specified except as appeared in Exhibit A of the letters dated December 18, 1956 and January 8, 1957.
It is well known that loan instruments such as mortgages, bonds, notes, etc., insurance policies and long-term leases contain "v,any complicated provisions with respect to which there is often strenuous and protracted negotiation, frequently followed by disagreement and no meeting of the minds. Insofar as these last-mentioned letters required defendant and the lending institution to agree in the future as to the open, essential elements of the transaction, they were too indefinite to be enforced, and therefore did not constitute a binding commitment (Biothermal Process Corp. v. Cohu & Co., 283 App. Div. 60, affd, 308 N. Y. *90 689; Globus Realty Corp. v. Fleetwood Terrace, 275 App. Div. 34; Harper v. Schmulevits, 12 Misc 2d 568).
In addition to the express conditions contained in the letter of January 8,1957, there were implied conditions. The business essence of the deal, both from the standpoint of the defendant and the lending institution, .was the obtaining of leases satisfactory to both parties. Unless defendant was satisfied with the leases it could obtain, such as rental yields, and quality and type of tenants, it would not proceed with the substantial investment required for the construction of a shopping center, and would not obligate itself to take a mortgage loan. To expect defendant to accept or to be satisfied with any kind of lease or leases is unrealistic. Likewise, unless the lender was satisfied with the security of its mortgage loan, meaning, in addition to the real and personal property, the leases, rent roll, and calibre of tenants, it could refuse to make the mortgage loan. In short, satisfaction as to the leases is necessary. Without it, either party may refuse to close the mortgage loan. The overriding importance of the leases is shown by their original relationship to the other conditions set forth in the letters. Thus, upon the leases depend the type, plans and specifications and construction, since the requirements of the tenants influence construction. Upon the construction depends the appraised value of the property, and upon the appraised value is based the amount of the mortgage loan. In other words, no leases, no construction, no appraised valuation, no mortgage loan. The equation can be reduced to the following form: No leases, no mortgage loan. Thus, the obtaining of satisfactory leases was both an express and implied condition, which, if not fulfilled, entitled defendant to cancel and to receive the return of the $22,000 of stand-by deposit. Furthermore, the determination of a mortgage loan amount satisfactory to the defendant was also a condition which, if not fulfilled, entitled defendant to cancel and to receive the return of its stand-by deposit. The court, in the action brought by defendant against TIAA for the return of the stand-by deposit, found that the defendant herein could not procure the necessary leases, that it so advised TIAA, and it demanded the return of its stand-by deposit. As heretofore stated, the trial court held that the defendant herein was entitled to the return of said moneys.
The letter of June 22,1956 provided in part for a commission of “ lfb net of the amount of the loan agreed to be made The phrase “1% net ” clearly indicates that the determination of the amount of plaintiff’s commission was dependent upon the determination of the actual amount of the mortgage loan which *91 was to be paid to defendant by TIAA. The significance of this phrase is more clearly understood when the January 8, 1957 letter is examined. An examination of that letter indicates that TIAA and the defendant anticipated the possibility that the ultimate mortgage loan amount might be less than $1,100,000, depending upon the final appraised value of the property. If the ultimate mortgage loan amount were less than $1,100,000, and if the defendant was unsatisfied with such lesser amount, defendant was given the option to cancel. If cancellation took place because of a mortgage loan amount less than $1,100,000, it is obvious that plaintiff cannot claim to have procured a mortgage loan or a definite commitment in the amount of $1,100,000. If, on the other hand, the mortgage loan amount were less than $1,100,000, and the defendant was satisfied with such lesser amount, the 1% net clause would come into effect, and the amount of plaintiff’s commission would then be calculated on 1% of the ultimate mortgage loan agreed to be made, and the amount of commission would then have to be less than $11,000. Thus, it is evident that the words “ a commission of 1% net ” were understood and intended to mean that the amount of the commission would be determined and payable only at such time as the ultimate net amount of the mortgage loan was determined and agreed upon.
Furthermore, contained in the June 22 agreement is the provision: “ And in addition we agree to pay attorney’s fees and all expenses usually required by the lender.” Obviously this refers to an obligation which would come into being at the time of the closing of the mortgage loan. Since this provision to pay attorney’s fees and all expenses is contained in the same sentence with the agreement to pay a commission of 1% net, it would appear that the timing of the payment of the commission was likewise intended to be at the closing of the mortgage loan.
We can go a step further. Even if plaintiff had procured an unconditional agreement to make a loan, it would not be entitled to a commission unless the loan were actually made.
The general rule applicable to employment of brokers to procure a loan is that it is not regarded as fully performed until the prospective lender actually makes the loan or refuses because of the fault or miscarriage of the principal (Duckworth v. Rogers, 109 App. Div. 168).
There is no showing in the instant case that the loan was not consummated because of the fault or mala fieles of defendant. On the contrary, the good faith of defendant was judicially declared in the decision of the court in the defendant’s suit against TIAA.
*92 In any event the credible testimony warrants a finding that the parties agreed that the commission would become due when a mortgage loan was granted by TIAA to defendant. No commission is payable to plaintiff inasmuch as the so-called commitment or conditional agreement to make a loan was never consummated by the granting of a mortgage loan. It wás judicially declared ineffectual and judgment was entered in favor of defendant against TIAA directing the return of the $22,000 stand-by deposit.
In the light of all of the circumstances herein, it is my considered opinion and I conclude that the plaintiff’s claim is devoid of merit and that the evidence clearly supports a finding in favor of the defendant. Judgment is accordingly awarded in favor of defendant dismissing the complaint on the merits. All motions in which decision was reserved are resolved in accordance with this determination. The Clerk of the court is directed to enter judgment accordingly. This constitutes the decision of the court, pursuant to section 440 of the Civil Practice Act. Settle judgment.