SONNENBLICK–GOLDMAN CORP., a
New York Corporation, Plaintiff-
Appellee,

v.

George J. MURPHY, Defendant-
Appellant.

No. 17462.

United States Court of Appeals
Seventh Circuit.

Jan. 7, 1970.

Rehearing Denied Feb. 24, 1970.

Michael P. Seng, Thomas W. McNamara, Thomas P. Sullivan, Chicago, Ill., for appellant, Jenner & Block, Chicago, Ill., of counsel.

Robert T. Drake, Carolyn H. Krause, Chicago, Ill., for appellee, Foss, Schuman & Drake, Chicago, Ill., of counsel.

Before CASTLE, Chief Judge, KILEY, Circuit Judge, and GORDON, District Judge.

CASTLE, Chief Judge.

Plaintiff brought this action in the district court[1] to recover $38,500 claimed as the balance due on a commission for procuring an interim loan commitment for defendant from Walter E. Heller & Company. The controversy arose from defendant's need for a loan to complete a high-rise apartment building in Chicago, Illinois. Construction of the building had begun in December, 1963, based on financing commitments which later failed to materialize. The

1. Jurisdiction is based on diversity of citizenship. The parties agree that Illinois law is controlling. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

contract price for construction totaled $1,000,000. On May 1, 1964, when the property was a seven-story shell building, construction stopped. At that time there was $275,000 of work in place for which payment was due to tradesmen and suppliers and for which defendant was personally liable.

On March 31, 1965, defendant was able to procure a permanent loan commitment from Mutual Benefit Life Insurance Company in the amount of $1,-000,000. The terms of this commitment provided: that if construction was not resumed by May 15, 1965, it would expire;[2] that $150,000 was to be withheld until a specified rental level was established; and that the loan funds would be disbursed only when construction was completed and the building ready for occupancy free and clear of liens and incumbrances. Thus, defendant needed an interim loan to finance the remaining construction and satisfy the outstanding creditors.

In January, 1966, defendant met with Cornelius G. Pitt, an attorney and mortgage broker, who contacted Sidney Troy of plaintiff, Sonnenblick-Goldman Corporation, a New York brokerage firm. Pitt and defendant met with Troy in New York on January 5, 1966, at which meeting the parties discussed the securing of interim financing. Plaintiff's commission for brokering the loan was agreed to be 4% of the amount to be committed, with Pitt receiving 25% of that commission as the forwarding broker. Defendant was required to make a "good faith" deposit of $10,000 as an advance on the commission.[3] An application for commitment was prepared and signed by defendant and Troy. In the application, defendant authorized plaintiff and Pitt exclusively to apply on defendant's behalf for a first mortgage "to

one or more lending institutions of [their] selection." The interest on the loan was to be 10% per annum, and the loan was to cover the period before Mutual Benefit would disburse its funds to defendant. The $150,000 "gap" created by the terms of the Mutual Benefit commitment was later provided by Standard Financial Corporation.

The application for commitment which defendant submitted to plaintiff also contained the following clauses:

"4. The undersigned expressly warrant that your services in procuring a loan commitment are fully performed at the time such commitment is issued by the Lender, and that the undersigned is in all respects qualified to accept such a loan and you are not to be concerned with the qualifications of the undersigned, the vesting of title, or other matters affecting the recordation of such loan.

\*   \*   \*   \*   \*   \*

"6. In consideration of your services in negotiating such a loan, we agree to pay you 4% of the amount of the loan commitment at the time same is delivered to us. Your fee shall be deemed to be earned upon receipt by us of a loan commitment with the terms described in Paragraph 2 above or in other terms accepted by us."

Plaintiff and Pitts testified that at the January 5 meeting, they said that the commission would not be due if the loan was not disbursed.

Shortly after this meeting, Troy, on behalf of his principal, the plaintiff herein, contacted Walter E. Heller and Company,[4] a large financing firm. Heller and Company, through its vice-presi-

---

2. Mutual Benefit extended this date a number of times, with the final date being June 30, 1966.

3. Of this $10,000 deposit made to plaintiff, defendant later directed a total of $8,500 to be paid as deposits to the two

lending institutions which eventually made commitments.

4. Heller and Company had previously rejected financing of defendant's project when defendant had individually applied to it in September, 1965.

dent in charge of construction loans, Maynard Wishner, expressed interest in the loan, but at an interest rate of 11% rather than the 10% specified in the January 5 application. On February 28, 1966, Heller and Company prepared an application for a $1,000,000 construction loan, which defendant signed and submitted.

Meanwhile, on February 1, 1966, Mutual Benefit had revised its commitment to provide that construction would resume on March 1, 1966 (later extended to June 30, 1966), to be completed by April 30, 1967, with Mutual Benefit having an option to delay the loan closing until May 31, 1968. Heller and Company insisted upon withholding interest for this additional year, requiring defendant to find a way to "warehouse" the loan between the date that construction was completed and the date that Mutual Benefit would disburse the proceeds of its loan. Otherwise, the funds which would have been disbursed by Heller and Company would have been insufficient to complete the project. Defendant, with the help of Troy, was eventually able to warehouse the loan to Advance Mortgage Company, which agreed to purchase the loan at par from Heller and Company on May 31, 1967.

On March 2, 1966, defendant signed a letter, addressed to plaintiff and Pitt, which was prepared by Troy, and which acknowledged "receipt of the loan commitment as generally set forth in your letters of January 5 and February 1, 1966," and acknowledged "that you have completed your undertaking as set forth in the application for Commitment and Authorization dated January 5, 1966 * * * and that the sum of $40,000 is now due and payable to you." At the bottom of this letter, Troy wrote "subject to signature of lending institutions." Both Heller and Company and Standard Financial eventually signed the letter.

Defendant's February 28, 1966 application to Heller and Company was finally accepted by the latter on April 11, 1966, on which date Heller sent the following letter to defendant, which defendant accepted by his signature:

"April 11, 1966

Mr. George J. Murphy
1310 Astor Street
Chicago, Illinois

Dear Mr. Murphy:

Reference is made to your application dated February 28, 1966, for a $1,000,000 interim construction loan to be secured by a first mortgage on the improved real property located at 7550 South Shore Drive, Chicago, Illinois, as amended by your letter of February 28, 1966.

We are pleased to advise you that your application has been approved, subject to the following additional conditions and modifications:

1. The interest shall be at the rate of $11\frac{1}{2}\%$ per annum on the unpaid principal balance from time to time outstanding, payable monthly.

2. There shall be delivered to us prior to the opening of the construction loan the following:

(a) An amendment of the commitment dated February 1, 1966, of The Mutual Benefit Life Insurance Company in the form attached hereto as Exhibit 'A'.

(b) An amendment of the commitment dated April 1, 1966, of Advance Mortgage Corporation in the form attached hereto as Exhibit 'B'.

(c) An agreement executed by Standard Financial Corporation in the form attached hereto as Exhibit 'C'.

3. Notwithstanding anything to the contrary contained in sub-paragraph 6(m) of your application dated February 28, 1966, your return of the carbon copy of this letter with your acceptance endorsed thereon within five (5) days, together with an additional deposit of $2,500, shall effect a binding commitment between us in accordance with the terms of your application, as heretofore and herein

amended, and shall satisfy the requirement of the commitment fee deposit provided in said sub-paragraph 6(m). In the event the construction loan is not opened within sixty (60) days from the date hereof for any reason except our default, we shall have the right to retain said commitment fee deposit of $5,000 as liquidated damages; otherwise, said deposit shall be refunded to you, less any out-of-pocket costs, in accordance with the provisions of said subparagraph 6(m).

> Very truly yours,
> Walter E. Heller & Company
> By /s/ Maynard I. Wishner
>     *Vice-President*

Accepted:
/s/ George Murphy"

Although the three amendments mentioned in the letter were secured, Heller and Company and the defendant could not agree upon the amount of reserves to be withheld under paragraph 6(g) of their agreement.[5] The negotiating continued through June, 1966, with the principal problem being that not enough funds would have been disbursed to cover the cost of completing the project. On June 30, 1966, the Mutual Benefit commitment lapsed by its terms, and Heller and Company revoked its commitment on August 2, 1966.

Defendant refused to pay plaintiff the $38,500 [6] allegedly due on the commission, and plaintiff brought suit for that amount. Defendant counterclaimed for $99,500 on the ground of alleged breach of plaintiff's agreement to procure a construction loan commitment. The district court directed a verdict for the plaintiff, dismissed defendant's counterclaim, and denied leave to file an amended answer and counterclaim under Rule 15(b), Federal Rules of Civil Procedure.

■ The central issue on appeal is whether or not plaintiff earned its commission under the terms of its contract with defendant. Defendant argues that the commission was not to become payable unless and until the loan had actually been disbursed. However, this contention is rebutted by the words of the January 5, 1966 "application for commitment," which provided that plaintiff's "services in procuring a loan commitment are fully performed at the time such commitment is issued by the Lender. * * *" The application, which, upon acceptance, became the contract between the parties, further provided:

> "6. In consideration of your services in negotiating such a loan, we agree to pay you 4% of the amount of the loan commitment at the time same is delivered to us. Your fee shall be deemed to be earned upon receipt by us of a loan commitment with the terms described in Paragraph 2 above or in other terms accepted by us."

We are of the opinion that this language is unequivocal and provides that plaintiff was to negotiate a "loan" and was to be paid its commission when the "loan commitment" was delivered to defendant by the lender. Thus, no ambiguity is created by the written document which would permit the admission of parol evidence to alter the terms of the writing. Olson v. Rossetter, 399 Ill. 232, 77 N.E.2d 652 (1948). This Court will not strain to find ambiguity in a contract where, in fact, none exists. Farber v. Great American Insurance Company, 406 F.2d 1228, 1233 (7th Cir. 1969); Miller v. Madison County Mutual Auto.

---

5. In this clause, defendant agreed to the following conditions ("you" refers to Heller and Company): "You shall be furnished with evidence satisfactory to you that funds you have on hand, whether from the proceeds of your loan less required reserves, including a reasonable reserve for contingencies, or otherwise, are sufficient to complete all of the improvements and pay all other charges and expenses, including your required monthly payments of interest on your loan throughout the term thereof, free and clear of any liens and encumbrances.

6. This amount represented the original $40,000 (4% of $1,000,000) less the $1,500 still remaining from the good faith deposit.

Insurance Company, 46 Ill.App.2d 413, 418; 197 N.E.2d 153 (1964).

The question, then, is whether a loan commitment, which constituted an enforceable contract, was delivered by the lender to defendant. See Fox v. Ryan, 240 Ill. 391, 396, 88 N.E. 974 (1909). An enforceable contract requires mutuality of obligation, whereby both parties are bound to perform. Meadows v. Radio Industries, 222 F.2d 347 (7th Cir. 1955). We hold that the contract entered into between defendant and Heller and Company met this test of enforceability.

Defendant argues that the contract was too vague and indefinite to be enforceable, and was merely an "agreement to agree." We disagree. The fact that some of the terms contained in the commitment, specifically paragraph 6(g), were inherently flexible does not render the contract unenforceable. Where the parties themselves have manifested an intent to make a contract and to bind themselves to render future performance, the courts should not frustrate this intention by holding that a gap in one of the terms of the otherwise binding agreement renders the contract too vague and indefinite to enforce.

"The fact that the parties have left some matters to be determined in the future should not prevent enforcement, if some method of determination independent of a party's mere 'wish, will, and desire' exists, either by virtue of the agreement itself or by commercial practice or other usage or custom. This may be the case, even though the determination is left to one of the contracting parties, if he is required to make it 'in good faith' in accordance with some existing standard or with facts capable of objective proof." Corbin on Contracts, § 95, pp. 401–402; § 97, pp. 425–426.

In the instant case, the amount of reserves under paragraph 6(g) of the agreement between defendant and Heller and Company was left to the discretion of the lender. However, Heller and Company was not at liberty to require an arbitrary amount of reserves, but was under an obligation to act reasonably in making such a requirement. Indeed, the express language of the clause includes the term "reasonable reserve." See also W. C. Shepherd Company v. Royal Indemnity Co., 192 F.2d 710 (5th Cir. 1951), where the court held that a surety contract which left the time and amounts of certain advances to the surety's discretion implied that the latter could not act arbitrarily, but rather reasonably, and was therefore enforceable.[7]

Thus, the agreement between Heller and Company and defendant required Heller to loan the sum of $1,000,000, less certain reserves and holdbacks which were to be determined by the lender, in a reasonable manner, based on subsequent events. The nature of the agreement compels the use of such a reserve clause. If the lender has acted in an unreasonable manner, there may be a cause of action against it for breach of contract. However, this is irrelevant to the broker's claim for commission due on its

7. The holding in Clark, Inc. v. Boston Road Shopping Center, 24 Misc.2d 84, 207 N.Y.S.2d 582 (1960), cited by defendant, is inapposite to the instant case. In *Clark*, the court held that a requirement in the contract entered into between the shopping center and the lender, which conditioned the loan on the former's obtaining satisfactory leases, rendered the contract unenforceable since the court interpreted "satisfactory" as meaning subjectively acceptable to both parties. In the instant case, however, the contract between Heller and defend-ant provided for "reasonable" reserves, thus eliminating the subjective qualification which was fatal to the contract in *Clark*. Moreover, in Boston Road Shopping Center, Inc. v. Teachers Ins. & Annuity Assoc., 13 A.D.2d 106, 213 N.Y.S. 2d 522, 526 (App.Div.1961), *aff'd* 11 N.Y.2d 831, 227 N.Y.S.2d 444, 182 N.E. 2d 116 (1962), a higher court, in a case involving the same loan commitment as in *Clark*, held that the contract was enforceable since reasonableness was implicitly included in its terms.

negotiating and tendering to defendant a loan commitment. The fact that the ultimate transaction fell through, regardless of who was at fault, defendant or Heller, does not affect the validity of the broker's claim for commission once an enforceable agreement has been entered into between the borrower and the lender. See Blanken v. Bechtel Properties, Inc., 194 F.Supp. 638, 640, aff'd. 112 U.S.App.D.C. 97, 299 F.2d 928 (1962); Baker, Fentress and Company v. Young, 55 F.2d 53, 54 (7th Cir. 1932); Colvin v. Post Mortgage and Land Company, 225 N.Y. 510, 516, 122 N.E. 454, 455 (1919).

■ Defendant also argues that parol evidence of an alleged agreement between him and plaintiff's agent, Troy, that the net amount to be disbursed was to be $900,000,[8] should have been admitted into evidence to alter or supplement the written contract. This alleged agreement took place before April 11, 1966, when defendant accepted Heller's proposed commitment. Thus, the alleged oral agreement was entered into prior to the final written contract between the borrower and the lender, and the parol evidence rule precludes admission of the oral agreement to alter the terms of the later writing, see Belvidere Distilling Company v. Reconstruction Finance Corporation, 211 F.2d 893, 895 (7th Cir. 1954); and since defendant accepted that contract with Heller, he cannot now claim that the difference between the terms of that contract and those contained in an alleged oral agreement alters defendant's contract with plaintiff.

The simple fact, which is determinative of the instant case, is that defendant's contract with plaintiff provided that the latter's commission would be earned when the defendant received "a loan commitment with the terms described [prior thereto in the application] * * * or in other terms accepted by [the plaintiff]," and that he

accepted those other terms by signing the April 11, 1966 proposal submitted by the lender, Heller and Company. These facts are conclusive and compel recovery by the plaintiff. The judgment below is therefore affirmed.

Affirmed.

---

8. The transaction fell through mainly because only $850,000 would have been disbursed by Heller.